WHITLOCK *v.* COHN.

Opinion delivered January 2, 1904.

1.  ESTOPPEL—PAYMENT.—B., claimant by right of occupancy of a tract of
    government land at Hot Springs, leased it to C.. who transferred his
    lease to his wife.  She mortgaged the land to W.  Pending litigation
    to establish his right to purchase the land from the government, B.
    paid interest due under the mortgage to W. *Held,* not to estop B. from
    claiming title, nor to create any obligation on his part to pay the
    mortgage debt.  (Page 86.)

2.  CONFLICT OF LAWS—PRESUMPTION IN FAVOR OF CONTRACT.—Where a
    contract of loan, executed in this state but by its express terms made
    payable in the state of Illinois, provided for a rate of interest lawful
    in this state but usurious in Illinois, it will be presumed that the con-
    tract was executed with reference to the laws of this state.  (Page 87.)

Appeal from Garland Chancery Court.

LELAND LEATHERMAN, Chancellor.

Suit by B. C. Whitlock against Henry Cohn, Charlotte Cohn,
George Belding, Henry Belding and W. Mitchell, administrator
of the estate of Albert Belding, deceased.  Decree was for
defendants, and plaintiff appeals.  Modified.

*Geo. G. Latta,* for appellant.

Intent is an essential element of usury.  9 Ark. 258; 25
Ark. 258.  This intent must be averred and proved.  25 Ark.
19.  In equity the borrower alleging usury must pay or tender
the principal with legal interest.  32 Ark. 346; 46 Ark. 50.
Usury can be pleaded only by the borrower or his privies—never
by the usurer.  36 Ark. 248.  A bonus taken by an agent without
the knowledge of the lender is not usury.  63 Ark. 86; 33 Am.
Rep. 140; 51 Ark. 548; 57 Ark. 256; 54 Ark. 578; 65 Ark. 313;
66 Ark. 13; 66 Ark. 389; 116 U. S. 98.  As to what will
constitute usury, see 63 Ark. 249.  The proof of usury is on
the defendants.  57 Ark. 251; 116 U. S. 98.  Usury must be

clearly proved. 57 Ark. 250. The contract is governed by the *lex fori,* and the Arkansas law as to interest applies. 19 So. Car. 583; s. c. 45 Am. Rep. 796; 84 Ga. 481. Where a note is made in one state, to be paid in another, the conventional rate of interest in the state where the contract was made may be reserved, although such a rate be disallowed at the place where payment is to be made. 8 Mart. N. S. (La.) 35; 12 La. Ann. 815; 3 Watts & S. 328. Extrinsic proof of intention as to what law and rate of interest shall govern is admissible. 9 Port. 1; 81 N. Y. 571, 572. In the absence of proof, the presumption is that the rate of interest at the place of the execution of a contract is the same as it is within the jurisdiction of the court. 24 Ill. 293, 651. In the absence of express agreement the law of the place of payment governs. 22 Barb. 118; 35 Ark. 53; 1 Wall. 298, 310; 60 Fed. 734; 11 Ia. 2; 22 Ia. 194; 90 Ia. 300; 1 Paige, 300; 6 Paige, 627; 2 Kent, Com. 60; 39 Oh. St. 7; 79 Ind. 172; 13 Wis. 221; 12 Wis. 692; 11 Wis. 333; 12 Wis. 779; 14 Vt. 38; 91 Ga. 507; 4 Cold. 31; 19 So. Car. 583; 38 S. W. 1065; Pars. Merc. Law. 321; 2 Pars. Cont. 584; Bish. Cont. 1388; Dan. Neg. Inst. 922. Usury laws of another state not enforceable here. 88 Fed. 7; 60 Fed. 734; Bish. Cont. 1398, and cases cited; Dan. Neg. Inst., § 922, and cases cited. Further, that in the absence of agreement the law of the place of payment governs, see: 2 Pars. Cont. 698, and cases cited; 35 U. S. S. C. Rep. (L. C. P. Ed.) 384, 408; 12 L. R. A. 93. The Beldings cannot plead usury in this case. 67 Ark. 252.

*Cantrell & Loughborough,* for appellee, Albert Belding.

Whitlock, as a privy of Cohen, is bound by the decision in *Goode* v. *Gaines,* 145 U. S. 541. 13 Ark. 220; 20 Ark. 85. Whitlock had constructive notice. Sand. & H. Dig., § 727; 22 Ark. 477; 35 Ark. 100. Whitlock had notice through his agent, Hay. 11 Wall. 367; 21 Ark. 22; 49 Ark. 336; 52 Ark. 11. The mortgage was merely collateral to the loan, and the law of the place where the property is situated does not control as to interest. 61 Ark. 329; 66 Ark. 77; 69 Ark. 352. The law of a place where a note or debt is payable governs as to interest. 14 Ark. 189; 18 Ark. 456; 26 Ark. 356; 33 Ark. 648; 60 Ark. 269; 69 Ark. 352; 35

Ark. 52; 44 Ark. 230; 49 Ark. 54; 61 Ark. 329; 66 Ark. 77; 69 Ark. 612. In the absence of stipulation to the contrary, the law of the place of performance of a contract governs. 95 Tenn. 585; 13 Pet. 77; 142 U. S. 116; 77 N. Y. 573; 91 Ga. 507; 14 Vt. 38; 19 S. C. 583; 9 Port. 1. As to the extraterritorial enforcement of the usury laws of Illinois forfeiting the interest, see: 22 Ark. 125; 60 Ark. 269; 69 Ark. 355. There is no personal liability on the Beldings. Forbearance to sue, without an agreement to so do, is not a sufficient consideration for a guaranty. 68 Ark. 276; Wood, Stat. Fr. 173; 8 Cush. 85; 62 Barb. 420; 83 Me. 80; 32 Pa. St. 10; 15 Tex. App. 273; 93 Fed. 171; 14 Am. & Eng. Enc. Law, 1137.

*Chas. D. Greaves,* for appellee Geo. Belding, adopts brief of appellee, Albert Belding.

*Wood & Henderson,* for appellees H. & C. Cohn.

The Beldings have no cause of action against the Cohns on account of payments made to Whitlock on the note. 2 Enc. Pl. & Pr. 1012; 37 Am. Rep. 794; 27 Am. Dec. 638; 43 Fed. 166; 22 Am. & Eng. Enc. Law (2nd Ed.) 537; 16 Ark. 656. No personal judgment can be rendered against Charlotte Cohn on the note because she was a married woman at the time of the making thereof. 48 Ark. 220; 43 Ark. 164; 29 Ark. 346; 66 Ark. 113; 64 Ark. 385.

BUNN, C. J. The appellant, B. C. Whitlock, a citizen of Warren, Illinois, through his agent, Dr. C. D. Hay, of the city of Hot Springs, Arkansas, on the 11th of September, 1882, loaned Henry Cohn and Charlotte Cohn the sum of $3,000, taking their joint and several promissory note for the same, a copy of which is as follows, towit:

"Hot Springs, Ark., September 11, 1882.

"Five years after date, for value received, we promise to pay to the order of Benjamin C. Whitlock the sum of three thousand dollars with interest at the rate of ten per cent. per annum from date until paid. Said interest payable quarterly, and in case of default in the payment of said interest for any quarter of

said period then the whole of this note to become due and payable. This note is secured by a certain deed of trust of even date herewith. Interest and principal payable at Warren, Illinois."

The deed of trust referred to in said note was executed by Henry and Charlotte Cohn to James G. Allen, as trustee, on the lot in controversy, the same being then claimed by the said Charlotte Cohn.

The principal and controlling questions in this case are, first, as to the title of Charlotte Cohn to the lot, and, second, as to the usurious character of the transaction of the loan.

Prior to the execution of the deed of trust and note aforesaid, and before the United States government had taken any effective steps to settle questions arising between claimants by occupancy and the government concerning the Hot Springs reservation, W. H. Gaines, holding, for himself and the Beldings, occupant claims on several lots, among them that in controversy, namely, lot 7, in block 130, leased the lot in controversy to Henry Cohn, and he subsequently transferred this lease to his wife, Charlotte Cohn, and when, sometime afterwards, the United States government had appointed a commissioner to settle these claims, Charlotte Cohn presented her claim to him, not as a tenant of Gaines, but as the owner of the occupant rights, the United States commissioner awarded her the privilege of purchasing the lot at the stipulated price, which she then paid, and received the patent from the government. She thus held when she executed the deed of trust and note referred to above, no further steps having been taken up to that time to controvert her title thus determined, although other claimants were not barred of their rights to do so.

Some time afterwards Gaines and others instituted suit in the district federal court, setting up the facts against Charlotte Cohn, controverting her title thus acquired. This suit was appealed to the supreme court of the United States, and there decided against Charlotte Cohn, and in favor of Gaines. Whitlock was not made a party to this suit, and was, of course, not absolutely precluded by that proceeding. But the correctness of that decision is not questioned in this suit nor elsewhere by Whitlock, at least with any show of reason. The mortgage or deed of trust, it appears to us, was on property to which the said Charlotte had no title. But it is contended that by paying the

interest on said note as it fell due the Beldings in some way obligated themselves to pay off said deed of trust, and were estopped from contesting plaintiff's right to enforce his mortgage security. The mere payment of the interest by the Beldings, and acquiescence for the time in the *status quo* of the parties until the rights of the parties could be finally settled, worked no estoppel against the Beldings, and created no obligation on their part to continue to pay on the mortgage debt until the same should be settled. Such an obligation was without consideration. The Beldings were claimants of the property, and afterwards successfully maintained this claim before the proper tribunal. They could not be deprived of the fruits of their litigation in this way. There is no disputing the fact that they are now the real owners of the lot. The contention, it appears to us, is settled. Whether or not the debt secured by the deed of trust is usurious, requires further notice. There is nothing in the evidence going to show that the note, under the Arkansas laws, is usurious. The commissions charged by Bell were unknown to Whitlock. He was not Whitlock's agent, and the 3 per cent. charged by him as commissions seems to have been a matter independent of the interest, for which Whitlock was in nowise responsible.

It is contended, further, that the contract was and is an Illinois contract, since the principal and interest is made payable in that state, and that in that state contracts for more than 7 per cent. per annum are usurious and void as to the whole of the interest. Where the intention of the parties is not otherwise more directly and definitely expressed in the contract, nor can be otherwise inferred, the place of payment will determine the law with reference to which parties have contracted; but parties will not be presumed to have contracted with reference to a law which will have the effect of annulling their contract for illegality in its very making, where another intention can be gathered, unless it be found that they were seeking in some way to avoid the force of the law, as in case of usury, for instance. The contract of the parties would be valid on its face under the laws of Arkansas, but not under the laws of Illinois. The presumption is against the contention that the parties contracted with reference to the laws of Illinois.

The whole question is fully and satisfactorily discussed in 22 Am. & Eng. Enc. Law, 1329, and in the cases there cited.

There is no usury in the contract, and Whitlock was entitled to judgment against the Cohns on the note, except that, if it be shown that Charlotte signed the same as a mere security for her husband, and not for the benefit of herself or her property, no personal judgment should be against her. The evidence is conflicting on this point, and it is not clearly shown that she is a mere security. In so far the decree will be reversed, and decree entered on the note for Whitlock against the Cohns, but as to the Beldings the same will be affirmed as to the title to the lot.

ON REHEARING.

Opinion delivered April 9, 1904.

BUNN, C. J. This cause was heretofore heard and determined in this court, in affirmance of the decree of the chancellor in the court below, but on grounds different from those upon which he based his decree. It comes up again on motion for a rehearing; this time on objections to the decree of this court on the first hearing, and mainly, if not altogether, on the question whether or not Whitlock was an innocent mortgagee in the deed of trust executed to James G. Allen, as trustee for his benefit, on the 11th day of September, 1882, on lot No. 7, block 130, in the city of Hot Springs, Arkansas. The question was not presented— at least not pressed—in the former hearing. We are now to consider it, and the law applicable thereto.

The evidence in this case, we think, shows, when taken altogether, that Whitlock, either personally or through his agents, had notice of the claim of Gaines, which was among the first presented before the United States commissioner appointed under an act of Congress to adjust the claims of occupants on the reservation lands in the city of Hot Springs, among other things, and principally to determine who, if any one, had a pre-emption right to purchase, under said act of Congress, any of the lots and parcels of land in said reservation, the paramount title of the government to all of them having been previously settled by the several decisions of the Supreme Court of the United States; and certainly he had notice sufficient to put him on inquiry which, if

properly pursued, would have given him full information in rela-
tion thereto. Whitlock, in effecting the loan of $3,000 to Henry
Cohn and his wife, Charlotte Cohn, the patentee of the govern-
ment, acted for the most part through his agent, Dr. Hay, a resi-
dent of Hot Springs, who, with said Allen, effected the loan, both
examining the records together, which records showed that Char-
lotte Cohn was the lessee of Gaines when his claim to the pre-
emption right was filed before the commissioner, and not the orig-
inal occupant of the same, nor owner of the improvements, except
in so far as she had purchased the same from her said landlord;
that, in fact, her claim was groundless for the purpose of securing
the preference right to purchase the lot involved, as was after-
wards determined by the Supreme Court of the United States in
a controversy between Gaines and the Cohns, to which, however,
Whitlock was not a party. However, it is in evidence, as given by
Henry Cohn, that on one occasion, while the negotiations for the
loan were going on, as we infer, when Whitlock was sojourning
in Hot Springs, they had a conversation about the same, and that
the subject was under discussion between them, and that Whit-
lock was informed by him of the claim of Gaines, and all about
it, as it stood at that time. The knowledge of Whitlock, on the
subject, may also be inferred from many incidental statements
forming part of the testimony in the case, and from the fact that
the matter of the settlement and adjustment of these claims by
said commissioner was of such public notoriety that his acknowl-
edged agent, Dr. Hay, who was dead before this cause was heard
in the court below, must have known of it. And it appears in still
more positive evidence that Allen, also deceased, then engaged
in effecting the loan from Whitlock to the Cohns, was familiar
with the history of the claim of Gaines and the lease from him to
the Cohns, and that he was at least in so far the agent of Whit-
lock that he looked up the records and prepared the necessary
papers in the transaction; and that Whitlock, when in Hot Springs,
made Allen's office his headquarters. The evidence convinces us
that the claim of Gaines as it was presented before the commis-
sioner was undoubtedly known to Whitlock, or should have been
known to him, or his agent, when he took the deed of trust.
Gaines (we should say the Beldings, who in the meantime stood
in his shoes) instituted his suit in the United States court to cor-
rect the rulings of the commissioner by which Charlotte Cohn

had secured her patent about two years after the date of her patent. This, we think, was not an unreasonable delay in prosecuting his claim to a final determination.

Our attention is called to the case of *McDonald* v. *Belding,* 145 U. S. 492, which is the leading case on the subject of what constitutes one an innocent purchaser or mortgagee in such case. That case is undoubtedly the correct law on the subject, and, when the facts are the same, would control the decision of this court in its determination of any case. But McDonald in that case paid cash for the property without actual notice of the claim of plaintiffs, or of either of them. The main question, did he have constructive notice, was denied in the findings of the court. And the case finally went off on the fact that the Beldings had waited more than seven years to prosecute their claim against McDonald, who had purchased from the patentee. The facts in that case were quite different from the facts in this case, in so far as they determine the question of innocent purchaser or mortgagee.

We are of the opinion that the motion for rehearing should be overruled, and it is so ordered.