## McHenry *v*. Vaught.

### Opinion delivered November 28, 1921.

Usury—bonus paid to lender's agent.—Where a lender's agent, with the borrower's knowledge, exacted from the borrower a bonus in addition to the highest lawful interest charged by the lender, this rendered the transaction usurious, and the contract is void.

· Appeal from Polk Chancery Court; *James D. Shaver,* Chancellor; affirmed.

#### STATEMENT BY THE COURT.

Carrie McHenry brought this suit in equity against Frederica Vaught and J. J. Vaught to foreclose a mortgage on 120 acres of land in Polk County, Ark., given to secure a note for $900.   The defense was usury.

According to the testimony of J. J. Vaught, the husband of Frederica Vaught, they resided on their farm comprising 120 acres in Polk County, Ark., during the year 1916, and ever since that time.   R. S. Cox resided in Ft. Smith, Ark., and came to see them with regard to a loan on their farm.   They made an agreement with Cox to borrow $900 and give a mortgage on their farm to secure the same.   Cox represented that he was lending money for F. B. Collins.   Early in January, T. M. Miller came to inspect the farm and brought the note and mortgage for the Vaughts to execute.   They signed a note for $900, dated January 7, 1916, payable to the order of F. B. Collins with interest at the rate of 6 per cent. per annum from January 15, 1916, until maturity, payable semi-annually, according to the tenor of the fourteen interest notes.   The first of the interest notes was for

$24.75, and the remaining thirteen interest notes were for $27 each. They signed the mortgage on their farm to secure the principal and interest notes on the same day. Miller also presented to them a loan contract, which they also signed on the 7th day of January, 1916. This contract recites that R. S. Cox is appointed their agent to negotiate a loan of $900 for seven years. It was agreed to pay him as commissioner the sum of $252. $126 of this amount was in cash, and the remaining $126 was payable by two notes for $63 each due respectively January 1, 1917 and 1918. It was also agreed that these two notes should be secured by a second mortgage on their farm. Two or three months after the execution of these instruments, J. J. Vaught received $774. Several months thereafter F. B. Collins sent an additional $36 to Vaught, stating that a mistake had been made in that amount in the mortgage. This made $810 which was received by J. J. Vaught, and the whole amount was sent through the office of the F. B. Collins Investment Company. Cox was not present when the note and mortgage were executed. Cox transferred the loan contract signed by J. J. Vaught and wife to F. G. Tompkins.

R. S. Cox was a witness for the plaintiff. According to his testimony, he assigned the loan contract to F. G. Tompkins, paid him the $126 cash, and retained the two notes for $63 each. During that year Cox was not an agent for F. B. Collins, or for the F. B. Collins Investment Company. Since 1917, he had been inspector for F. B. Collins and for the F. B. Collins Investment Company on a salary. Cox admitted that he was not present when the note and mortgage were executed, but said that he had instructed F. G. Tompkins as to the nature of the contract he had with the Vaughts.

F. B. Collins was also a witness for the plaintiff. According to his testimony, in January, 1916, he was engaged in making farm loans. He agreed to purchase the loan made by F. G. Tompkins and R. C. Cox on a farm in Polk County, Ark., belonging to Frederica Vaught

and J. J. Vaught. The loan was for $900. Collins did not have any interest in the second mortgage given to F. G. Tompkins to secure the $126. Collins sold his loan to the plaintiff, Carrie McHenry.

T. M. Miller was the inspector of Collins, and approved the loan in question after it had been submitted to Collins by F. G. Tompkins. It was Miller's custom to follow the instructions of the agent for the borrower in drawing the notes and mortgages and looking after the execution of the same. Collins carried an account with F. B. Collins Investment Company, and in closing out his loans the proper officer of that company was authorized to pay out the money and charge the same to his account. This method of procedure was followed in this case. Neither R. S. Cox nor F. G. Tompkins were his agents in the premises. Collins had bought some loans submitted to him coming from Cox. F. G. Tompkins was treasurer of the F. B. Collins Investment Company at the time.

The court found that Cox and Tompkins were the agents of Collins, and that the note sued on was void for usury. It was therefore decreed that the complaint of the plaintiff should be dismissed for want of equity.

The plaintiff has duly prosecuted an appeal to this court.

*Pearson & Baird* and *Minor Pipkin*, for appellant.

When a borrower employs an agent or broker to negotiate a loan for him, and the compensation paid for such services, when added to the legal rate of interest, exceeds the highest interest allowed by law, this does not make the loan usurious. 27 R. C. L. 236, Sec. 3; 51 Ark. 534.

The fact that the agent who negotiated the loan divided the compensation with the agent of the lender does not render the transaction usurious. 27 R. C. L. 237, Sec. 38; 46 A. S. R. 197, note.

A loan is not rendered usurious by the lender's agent charging a commission for procuring the loan without

the lender's knowledge or consent. 27 R. C. L. 237, §
39. Innocence and ignorance on the part of the lender is
immaterial. *Ibid.*

Usury will not be inferred where from the circum-
stances the opposite conclusion can be reached. 68 Ark.
162; 74 Ark. 253; 67 Ark. 74.

Where the agent of a borrower in making a loan, hav-
ing no connection with the lender, demands a commission
for himself, this does not render the loan usurious, even
though in excess of the highest legal rate. 141 U. S. 384;
35 L. Ed. 786; 12 Sup. Ct. 1; 61 Ala. 507; 33 Conn. 81;
90 Ill. 952; 6 Bradw. (Ill.) 523; 89 Mo. 375; 1 S. W. 359;
81 N. Y. 351; 16 Hun. 209; 81 N. Y. 293; 66 N. Y. 544; 32
N. Y. 165; 21 N. Y. 219; 78 Am. Dec. 137; 14 Hun. (N. Y.)
537; 84 N. Y. 627; 64 Ark. 662; 43 S. W. 507.

Brokerage in excess of legal interest cannot affect
the principal when paid without his knowledge or con-
sent. 141 U. S. 384, 35 L. Ed. 786, 12 Sup. Ct. 1; 33 Fed.
636; 92 Ala. 163; 9 So. 143; 92 Ala. 135; 8 So. 388; 54
Ark. 573; 16 S. W. 575; 82 Ga. 299; 9 S. E. 1092; 7 S. E.
265; 133 Ill. 291; 24 N. E. 428; 133 Ill. 199; 24 N. E. 414;
23 Am. St. 603; 132 Ill. 550; 24 N. E. 573; 110 Ill. 390; 66
Miss. 365; 5 So. 239; 29 N. J. Eq. 454; 28 N. J. Eq. 568;
28 N. J. Eq. 345; 18 N. J. Eq. 481; 16 N. J. Eq. 537.

*J. I. Alley,* for appellees.

If the lender knew of the usury or had knowledge of
it, he is bound by it, and the contract is void. 51 Ark.
534; 132 Ark. 374; 54 Ark. 40; 54 Ark. 573; 51 Ark. 548;
51 Ark. 546.

HART, J. (after stating the facts). The defendant
signed a note for $900 dated January 7, 1916, payable to
the order of F. B. Collins on the 1st day of January, 1923.
The note bore 6 per cent. interest per annum, and the de-
fendant signed fourteen interest notes payable semi-an-
nually. Cox and Tompkins received $252 as commission.

Counsel for the plaintiff concedes that the commis-
sion paid Cox and Tompkins added to the principal and

interest of the notes exceeds in amount the legal rate of interest and renders the contract usurious, provided Cox and Tompkins were the agents of Collins.

In *Vahlberg* v. *Keaton*, 51 Ark. 534, the court, in discussing whether or not a bonus paid to the agent of the lender constitutes usury, said: "The lender may receive for the forbearance of money ten per cent. per annum and no more. In excess of that his agent can receive no bonus from the borrower. If the agent do receive from the borrower a bonus in excess of the highest lawful interest, either with his knowledge or under circumstances from which the law will presume he had knowledge, then the transaction is usurious; while, if the agent received the excessive bonus without his knowledge, and under circumstances from which his knowledge could not be reasonably presumed, the transaction would not be usurious. What circumstances will raise the presumption of knowledge must be determined in each case in accordance with the principle by which knowledge is imputed to persons, in controversies generally. We will add now, that where a lender places money with an agent to be loaned, with the understanding that he must receive the highest lawful interest, and that the agent must look to the borrower for his commissions, the circumstances necessarily impute knowledge to the lender, of an usurious bonus received by the agent upon each loan."

This rule has been steadily adhered to by the court ever since. *Habach* v. *Johnson*, 132 Ark. 374.

In *Jones* v. *Phillippe*, 135 Ark. 578, the court held that, where a loan of money was made at the highest rate of interest, and the lender, contemporaneously with the contract and as part consideration of it, received part of a bonus paid by the borrower to a broker for procuring the loan, the loan is usurious.

Here the lender did not receive the highest rate of interest, but it is conceded that the commission received when added to the interest amounted to more than ten per cent. per annum on the amount received by

the borrower. The question then is, were the commissions paid to Cox and Tompkins a part of the interest? As we have just seen, to render a loan usurious on account of a commission paid to a broker or intermediary, it must appear that he was the agent of the lender and took the commission under authority, express or implied, from his principal.

In the present case the borrowers agreed to pay Cox $252 as commission. Although Cox and Collins deny that Cox and Tompkins were the agents of Collins, the attending circumstances contradict them. Collins furnished the money directly to the borrowers. He was engaged in the farm loan business and paid all his loans to the borrower through the F. B. Collins Investment Company. Tompkins was treasurer of that company. Neither Cox nor Tompkins prepared or had anything to do with the note and mortgage in question. The note and mortgage were prepared by T. M. Miller, the agent of F. B. Collins, who was sent to inspect the farm. At the same time he prepared the loan contract in which it was agreed to pay Cox $252 commission. Miller had never seen Cox, and did not have any instructions from him as to preparing this loan contract. If Tompkins and Cox were not the agents of Collins, neither Collins nor Miller were interested in securing the signature of the Vaughts to the loan contract to Cox. This contract was executed simultaneously with the execution of the notes and mortgage. Tompkins was the treasurer of the company through which the payment to the Vaughts was made, and, as such treasurer, it was his duty to keep the account of Collins as to farm loans. When the relationship of Tompkins and Collins is considered in connection with the attending circumstances, we are of the opinion that the transaction was a cloak for usury, and that the chancellor did not err in finding for the defendants.

Tompkins took a second mortgage on the land in question to secure his commission in the sum of $126. He brought suit to foreclose his mortgage, and the testimony

was practically the same as in the present case. The chancery court held that the contract was usurious and void. Upon appeal to this court the decree of the chancery court was affirmed. *Tompkins* v. *Vaught,* 138 Ark. 262.

It is true, as pointed out in that opinion, that neither Collins nor his assignee was party to the suit, and the decree in that case did not affect their rights. However, the substance of the transaction is the same. In that case the court said that the evidence justified the conclusion that the notes in controversy were executed purely as a bonus to the lender, or his agent, for making the loan, and that the contract was usurious.

No reason has been given for making a different holding here, and we can perceive none. Therefore, the decree will be affirmed.