SMITH v. 'BROKAW.

Opinion delivered June 27, 1927.

1. USURY—WHAT LAW GOVERNS.—A loan secured by real estate in Arkansas, prepared at the office of the lender in Oklahoma, and mailed to its representative in Arkansas for signature of the mortgagors, and returned to the lender, *held* to constitute an Oklahoma contract and governed by the laws of that State relative to usury.

2. USURY—BROKERAGE CHARGE.—A brokerage charge of $400 for procuring a loan of $1,000, drawing 6 per cent. interest, *held* to exact more than 10 per cent. allowed to be paid, and to constitute a usurious contract.

3. USURY—ENFORCEMENT OF FOREIGN CONTRACT.—A contract made in Oklahoma, where it was not void for usury, will be enforced and adjudicated by the courts of Arkansas as it would be adjudicated in the courts of Oklahoma.

4. USURY—WHEN LOAN NOT USURIOUS.—Under Comp. St. Okla. 1921, §§ 5097, 5098, a contract executed in Oklahoma, exacting a bonus besides interest on loan for a period of years, wherein the interest did not exceed 10 per cent. per annum computed on the basis for the whole term, was not usurious.

Appeal from Faulkner Chancery Court; *John E. Martineau*, Special Chancellor; reversed.

STATEMENT BY THE COURT.

John V. Brokaw, assignee of a note for $1,000 made by E. L. Smith and wife, Mary C. Smith, on February 2, 1921, to F. B. Collins, and secured by a mortgage on their lands in Faulkner County, brought this suit to foreclose the mortgage, the mortgagees having defaulted in the payment of interest due on the note, which contained an acceleration clause authorizing the plaintiff to declare the note due upon the failure to pay any interest installments. T. M. Miller and the Faulkner County Bank & Trust Company were made parties defendant, upon the allegation that they claimed some interest or right in the land subsequent to the right of plaintiff and subject to his lien thereon.

The defendants, Smith and wife, admit the execution of the note, the interest coupons and mortgage sued on, and that default had been made in the payment of the

interest coupons, and plead usury as a defense. The answer alleged that, at the time they executed the note and mortgage sued on, and as a part of the same transaction, they also executed a second mortgage upon the same lands, securing three bonus or commission notes, the first for $40, due December 1, 1921, the second for $180, due December 1, 1922, and the third for $180, due December 1, 1923, or a total of $400 paid as a bonus to secure the loan. That the second mortgage and notes secured thereby are payable to T. M. Miller, and not to F. B. Collins, but that the payees of both said notes were officers and agents of the F. B. Collins Investment Company, and that both the first and second mortgages and the notes thereby secured were made for the benefit of the said F. B. Collins Investment Company and to its said respective officers merely for its convenience. That the notes and mortgages were executed in Faulkner County, Arkansas, being given an Oklahoma dating, and are payable in New York.

The case was tried on an agreed statement of facts, and the chancellor found the first note for $1,000, secured by a first mortgage executed to F. B. Collins, and the second mortgage securing an indebtedness of $400 to T. M. Miller, constituted an Oklahoma contract, was but a single transaction, and the second mortgage notes were given as a bonus to the agent of the lender, that the contract was usurious, and the penalty therefor, under the Oklahoma law, forfeited the interest in twice the amount actually paid; that the defendants were entitled to the cancellation of the second mortgage notes and mortgage and the unpaid interest upon the principal note, and entitled to recover as a counterclaim or set-off a credit upon the principal note in the sum of $215, twice the amount of interest paid by defendants, and that defendants were indebted to the plaintiff, Brokaw, in the sum of $785, balance on the $1,000 principal note, and entered a decree of foreclosure accordingly for said amount, with 6 per cent. interest from date thereof; from which judgment this appeal is prosecuted.

The facts substantially are as follows: The F. B. Collins Investment Company, an Oklahoma corporation, with its principal place of business in Oklahoma City, of that State, is authorized to do business in the State of Arkansas, and actually engaged in lending money on farms in Arkansas and elsewhere. F. B. Collins was president of the said investment company and T. M. Miller vice president thereof. Both lived in Oklahoma City, and were engaged, as agents of said corporation, in the business of negotiating and consummating loans for said company. All first mortgages securing loans for the said investment company were taken in the name of F. B. Collins, and the second mortgages in the name of T. M. Miller. The appellants, Smith and wife, are residents of Faulkner County, Arkansas, and owners of the land described in the mortgages. W. S. Cazort, a real estate and loan agent, was a representative in Faulkner County, Arkansas, of said F. B. Collins Investment Company, and, on the 21st day of January, 1921, Smith and wife made written application through him for a $1,000 loan upon their land, said application being made upon the regular forms furnished by F. B. Collins Investment Company. The application was forwarded to the investment company, and R. S. Cox, its inspector and examiner, was sent to appraise the Faulkner County lands before making the loan, and approved the application therefor, after examination. The Collins Investment Company prepared, at its home office in Oklahoma City, a first mortgage bond for $1,000, under date of February 2, 1921, due December 1, 1930, payable to F. B. Collins, bearing interest at 6 per cent. from February 15, 1921, to maturity, payable annually, according to the tenor of 10 interest coupons attached thereto, one for $47.50 and the other 9 for $60 each, one of said coupons to become due on the first of December each year from 1921 to 1930, both inclusive, the note or bond and the interest coupons bearing 10 per cent. interest after maturity, the holder being given the option to declare the whole amount due upon default in payment of any sum due, either principal or

interest. On the same date Collins Investment Company prepared, at its home office, a first mortgage on the lands to secure the payment of the loan and interest, at the same time the said company prepared a second mortgage on the lands to secure the payment of $400, which it charged as a commission or brokerage on the said loan, which sum was evidenced by three notes, the first for $40, due December 1, 1921, the other two for $180 each, due December 1, 1922 and 1923, respectively, all payable to T. M. Miller, and bearing 10 per cent. interest after maturity. Said notes and mortgages so prepared by the F. B. Collins Investment Company were mailed to its representative, W. T. Cazort, at Conway, Arkansas, and, on the 4th day of February, 1921, were duly executed by E. L. Smith and wife, Mary C. Smith, in Faulkner County, Arkansas, and returned to F. B. Collins Investment Company, which then sent them the sum of $1,000, the full amount loaned, by check on a bank in Oklahoma City, payable to their order. On February 25, 1921, F. B. Collins duly assigned the $1,000 note, coupons and first mortgage to John V. Brokaw, plaintiff herein, and nothing has been paid on said indebtedness, except the sum of $47.50, the first interest coupon due, and one of the $60 interest coupons due December 1, 1922.

*J. C. & Wm. J. Clark,* for appellant.

*Dean, Moore & Brazil,* for appellee.

Kirby, J., (after stating the facts). The chancellor correctly held the transaction to be an Oklahoma contract and governed by the laws of that State. The application for the loan was made through the representative at Conway, Arkansas, of the F. B. Collins Investment Company of Oklahoma City, where it was approved and the papers evidencing the loan and mortgage securing same were prepared, the notes and bonds bearing date of that place. The papers were forwarded to Conway, Arkansas, where they were executed by Smith and wife, and returned to the investment company in Oklahoma City, which sent its check on an Oklahoma bank to the mortgagees in Arkansas for the $1,000 loaned them. *Dupree* v. *Virgil*

*R. Coss Mortgage Co.,* 167 Ark. 18, 267 S. W. 586, 1119, and *Virgil R. Coss Mortgage Co.* v. *Jordan,* 167 Ark. 36, 267 S. W 590.

The F. B. Collins Investment Company, an Oklahoma corporation, authorized to do business in Arkansas, was engaged in the business of lending money upon farms in this State and elsewhere, negotiating and consummating its loans through its officers, F. B. Collins, president, and T. M. Miller, vice president. Its representative in the State of Arkansas procured the application of Smith and wife for the loan of $1,000, which was made, the principal note for the $1,000 loan being made payable to F. B. Collins, bearing interest at the rate of 6 per cent. per annum till due, and with the interest coupons bearing 10 per cent. after due till paid. This company charged a commission or brokerage, for making said loan, of $400, evidenced by three notes, one for $40 and two for $180 each, due on December 1, 1921, '22 and '23, respectively, all of said notes bearing interest at 10 per cent. from maturity and payable to T. M. Miller. The first and second mortgages were executed to secure the payment of said notes. This was all one transaction, and, notwithstanding the application made by the borrower, through its Arkansas representative, appointed the F. B. Collins Investment Company of Oklahoma City his agent to procure the loan, and authorized it, as his attorney, to do so, the investment company itself made the loan and charged the brokerage through its officers, taking the loan and brokerage notes, the note for the loan payable to F. B. Collins, who was its president, and the note for the brokerage to T. M. Miller, its vice president, and in doing so was not the exclusive agent of the borrower, and necessarily acted as the agent of the lender, since the investment company could not act otherwise than through its said officials in making the loan and charging the brokerage. *McHenry* v. *Vaught,* 150 Ark. 162, 234 S. W. 995, and *Dupree* v. *Virgil R. Coss Mortgage Co., supra.*

The brokerage charged for procuring the loan by the agent of the lender with the 6 per cent. interest

reserved for the use of the money, the amounts exacted were about $228 more than the ten per centum allowed to be paid, and constituted a usurious contract under the laws of this State. *Green* v. *Conservative Loan Co.*, 153 Ark. 219, 240 S. W. 13, and *Virgil R. Coss Mortgage Co.* v. *Jordan, supra.* This is not relieved against by the provision that usury was not intended to be charged, since no mistake is claimed or was made in the amount exacted, which is more than the law allows to be charged.

The contract being made in Oklahoma, where it is not void for usury, will be enforced and adjudicated by the courts of this State precisely as it would be adjudicated in the courts of that State. *Dodd* v. *Axle-Nut Sign Co.*, 126 Ark. 14, 189 S. W. 663; *Matthews* v. *Payne*, 47. Ark. 58, 14 S. W. 463.

The appellants recognized that the contract might be held to be an Oklahoma contract, and, in the amendment to their answer, alleged, as a counter-claim or set-off, that, under the laws of that State, the contract being usurious, they were entitled to recover twice the amount of the total interest charged or carried by the principal note, and prayed in the alternative judgment for $1,200 as a set-off.

The Oklahoma statutes relative to the legal and contract rate of interest and the forfeitures for a charge of excessive interest provide:

"The legal rate of interest shall not exceed six per cent. in the absence of any contract as to the rate of interest, and by contract parties may agree upon any rate not to exceed ten per cent. per annum. Said rates of six and ten per cent. shall be, respectively, the legal and the maximum contract rate of interest.

"The taking, receiving, reserving or charging a greater rate of interest than is provided by the preceding section shall be deemed a forfeiture of twice the amount of the interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case a greater rate of interest has been paid, the person by whom it has been paid, or his legal repre-

sentatives, may recover from the person, firm or corporation taking or receiving the same, in an action in the nature of an action of debt, twice the amount of the entire interest paid; provided, that such action shall be brought within two years after maturity of such usurious contract; provided further, that, when any suit is brought upon any note, bill or other evidence of indebtedness or to foreclose any mortgage or lien given to secure such indebtedness, when a greater rate of interest has been collected, reserved, charged or received than is provided for in this act, the defendant, or his legal representatives, may plead as a set-off or counter-claim in said action twice the amount of the entire interest collected, reserved, charged or received in said transaction or in all of such transactions between the same parties.'' (Act 1916). Sections 5097 and 5098 of the Oklahoma Compiled Statutes, 1921.

Although, under the territorial government, the maximum contract rate of interest was twelve instead of ten per cent., as now, according to the rule for the calculation of interest for testing a contract for usury, recognized as correct from territorial times by the courts of that State, the contract herein is not usurious, the $1,000 loan for 10 years at 6 per cent. only reserved $600 interest, while the three brokerage or commission notes, one for $40 and two for $180 each, secured by the second mortgage, when considered as a charge for the money loaned, only amount to $400, if paid in accordance with their terms, and the interest reserved for the loan with the commission notes only amounts to a charge of $1,000 interest on the amount of the loan for the 10 year period, and is not usurious, not exceeding the full legal contract rate, the 10 per cent. allowed to be charged, over the whole term, by the laws of Oklahoma.

In the case of *Metz* v. *Winne,* 15 Okla. 179 Pac. 224, wherein the mortgagors borrowed $600, payable in 10 years, with interest at 7 per cent. executed one note for the principal and ten notes for $42 each, representing the interest, and also one note for $150, which was additional

interest and claimed to have made the loan usurious, the court held otherwise, saying:

"The law of this Territory prohibits the taking or contracting for any higher rate of interest than twelve per cent. per annum, and makes it unlawful to deduct more than one year's interest from the loan in advance, but it is not unlawful to compute the interest for the entire time the loan is to run, and contract to pay such sums in installments of such sums and at such times as the parties may by contract agree.

"We know of no law that will prevent a borrower from paying all the interest on a loan at the end of one year, or in such installments as he may desire and the parties may agree upon, so long as the person making the loan does not exact over 12 per cent per annum, or deduct more than one year's interest from the amount of the loan in advance. The courts do not undertake to make contracts for individuals, nor to relieve them from burdensome obligations voluntarily assumed and entered into. We are unable to discover any error in the ruling and judgment of the district court in this case."

In *Covington* v. *Fisher*, 22 Okla. 214, 97 Pac. 618, the court says:

"It is true that in that case the interest was not taken out of the principal sum, but the case holds that the mortgagee had a right to contract for the payment of a part of the interest covering the entire period of the 10-year loan at the end of the first year, and for such a sum to be paid at that time as would be largely in excess of the maximum legal rate, if computed only for the period of a year; but the court holds it proper to make the computation for the entire time, and the principle to be drawn from the opinion is that the contracting for the payment of interest in advance does not make the transaction usurious."

In *Garland* v. *Union Trust Co.*, 63 Okla. 243, 165 Pac. 197, in a learned and exhaustive opinion the court held the contract not usurious, saying:

"There was no usury in this transaction. * * *Computing the interest for the entire time the loan had to run, does the interest reserved exceed the legal rate? If so, the loan is usurious; otherwise, not. In other words, the test is as laid down in *J. I. Case, etc.,* v. *Tomlin,* 174 Mo. App. 512, 161 S. W. 286. There, referring to *Taylor* v. *Buzzard,* 114 Mo. App. 622, 90 S. W. 126, the court said: 'In that case the test of usury in a contract is said to be whether it would, if performed, result in securing a greater rate of profit on the subject-matter than is allowed by law.' We are therefore of the opinion that there is no merit in defendants' contention, in effect, that the $2,325 deducted as interest in advance, together with the exaction of a note for $2,750, with interest thereon at 8 per cent. for a year, and the further exaction of $1,572.22 as interest on the loan up to December 21, 1912, or in all, $6,822.22, was the exaction of usury at the rate of 27 per cent. for a loan of $50,000 from the date of the mortgage up to that time. This for the reason that, although such rate seems excessive, computed, as it is, for a part only of the time the loan had to run, the same is not excessive when those payments are spread out over the entire time the contract, if performed, had to run, as we have seen."

In *Baker* v. *Pittsburg Mortgage Investment Co.* 67 Okla. 311, 171 Pac. 24, the court held the case rightly decided by the trial court upon the authority of *Metz* v. *Winne, supra,* saying:

"The opinion in *Metz v. Winne, supra,* was handed down by the territorial Supreme Court in September, 1904, and the proposition of law stated in the first paragraph of the syllabus has been approved at least twice by the Supreme Court of the State since statehood. *Covington* v. *Fisher,* 22 Okla. 207, 92 Pac. 615; *Garland* v. *Union Trust Co.,* 49 Okla. 654, 165 Pac. 197. In the latter case, after a very full examination and review of the authorities, the court adheres to the doctrine announced in *Metz* v. *Winne* and *Covington* v. *Fisher, supra.*"

The rule is reaffirmed in *Clements Mortgage Co.* v. *Johnston,* 83 Okla. 153, 201 Pac. 247; see also *Finerty Investment Co.* v. *Athey,* 89 Okla. 284, 215 Pac. 611, and also *American Investment Co.* v. *Lyons,* 29 N. M. 1, 218 Pac. 183, where the Supreme Court of New Mexico has reached the same conclusion about the rule for testing a contract for usury under the Oklahoma law as that expressed herein.

Having reached the conclusion that the loan involved in this transaction is not usurious under the laws of Oklahoma, by which the contract must be construed and enforced, it is not necessary to consider and determine the rights of John V. Brokaw as an innocent purchaser of the note in due course of business.

The chancellor having erred in holding the contract usurious, the decree is reversed, and the cause remanded with directions to enter a decree for John V. Brokaw, owner of the notes, secured by the first mortgage for the amount due thereon, with foreclosure of the lien and sale of the lands for payment, and all other necessary proceedings according to the principles of equity and not inconsistent with this opinion.