## N. B. YARBROUGH JR. ET AL v. PRENTICE LEE TRACTOR COMPANY, INC. ET AL

5-5853 479 S.W. 2d 549

Opinion delivered April 24, 1972
[Rehearing denied May 29, 1972]

*Don Gillaspie,* for appellants.

*Richard H. Mays* and *Michael R. Landers,* for appellees.

CARLETON HARRIS, Chief Justice. The question in this litigation is whether Arkansas law or Louisiana law applies to certain transactions between appellants, N. B. Yarbrough, N. B. Yarbrough Jr., and Raymond Yarbrough, of Union County Arkansas, and Prentice Lee Tractor Company, Inc., and Ouachita National Bank of Ouachita Parish, Louisiana. Appellants are loggers. In 1969, certain logging equipment, specifically a Massey-Ferguson 316 5D tractor, one new Beloit 136 loader mounted on a used 1965 Chevrolet truck, and one 440 Log Hog tractor with winch, were purchased from Prentice Lee Tractor Company and the notes and chattel mortgages were assigned to appellee, Ouachita National Bank

of Monroe, Louisiana. Three suits charging that the contracts were usurious were filed in the Chancery Court of Union County by appellants in August 1970. In November, the bank filed two suits in the Circuit Court of Union County, one against N. B. Yarbrough, Jr., and one against Raymond Yarbrough, alleging nonpayment, and seeking judgments on the notes and mortgages held by it. The pleadings in the circuit court suit were subsequently transferred to chancery, and after the filing of various pleadings and motions by the parties, the cases were consolidated for trial. The matter was heard on June 23, and on July 20, the court entered its decree finding that the sale of each piece of equipment heretofore mentioned should be construed and governed by the law of the State of Louisiana. Judgment was entered in favor of appellees for the amounts due under the notes, and in compliance with the chattel mortgages, the property was ordered sold if the judgments were not paid. [1] Complaints of the appellants were denied and dismissed. From the decree entered, appellants bring this appeal. For reversal, it is first asserted that appellees did not give notice that the law of Louisiana would be relied upon, and appellants should accordingly prevail, and it is then contended that, on the merits, the court should have held that Arkansas law was applicable.

The first contention for reversal is based upon Ark. Stat. Ann. § 27-2504 (Supp. 1971) which provides:

"A party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this State shall give notice in his pleadings or other reasonable written notice."

This provision perhaps was not strictly complied with. However, we do not feel that there is merit in this contention. In *Deposit Guaranty* v. *River Valley*, 247 Ark. 226, 444 S. W. 2d 880, this court, referring to that statute, said:

---

[1] Judgment was rendered against Raymond Yarbrough in the amount of $9,086.33 together with judgment for attorney's fees of 10% and judgment was rendered against N. B. Yarbrough, Senior and Junior, in the amount of $6,759.60 with attorney's fees of 10%.

"We have considered that statute in two earlier cases. In the *Hruska* case, *supra,* the plaintiffs relied upon the law of Missouri in their pleadings, but the defendant failed to plead its contention that the law of Louisiana was controlling. We held that in that situation the trial court correctly submitted the case to the jury under Missouri law. In the other case, *American Aviation* v. *Aviation Ins. Managers,* 244 Ark. 829, 427 S.W. 2d 544 (1968), we cited the statute in a footnote, without discussion, in holding the Arkansas law to be applicable.

Neither of those cases laid down a rigid rule requiring a party to assert his reliance upon foreign law at any particular point in the litigation. In fact, such an interpretation would not be in harmony with the purpose of the Uniform Act, which was to make it easier—not harder—for a party to rely upon the law of another jurisdiction. The Commissioners point out in their note to §3 of the Act that it is intended to change the rule prevailing in many states, that a court may not even consider foreign law unless it has been pleaded. The statute substitutes a rule of reasonable notice only. On this point the Commissioners went on to say: 'Any reasonable written notice will suffice. . .The court must exercise discretion in determining the proper timing of the notice in the light of the requirements of the case and fairness to the parties. The section does not attempt to prohibit the raising of an issue of foreign law after any particular point in the litigation. In exceptional situations, the issues may not become apparent until during or even after the trial, and, in appropriate cases, the notice may be given at that time.' 9B U. L. A. 329 (1966)."

While, as stated, there is no notice either separately, or in the pleadings that "We intend to assert that Louisiana law applies", this inference is certainly found in appellees' complaints. For instance, in the complaint against N. B. Yarbrough, Jr., a portion of the mortgage is copied and sets out that if the mortgagor defaults, the note shall be immediately due and payable in its entirety and that the property may be sold to the highest

bidder "all appraisement laws being hereby waived, more particularly the three days' notice provided by Article 735 of the Code of Practice, notice of seizure by sheriff, constable or justice of the peace, and the three days' delay, provided by Article 655 of the Code of Practice". The suit against Raymond Yarbrough contains even stronger language. It purports to copy a portion of the language which provides that the buyer "hereby expressly waives the benefit of appraisement and all laws conferring to same and the three (3) day notice and delay accorded by Article 2639 of the Louisiana Code of Civil Procedure, as well as notice of seizure by the Sheriff, Constable or Justice of the Peace, and the three (3) days' notice and delay prescribed by Article 2331 of the Louisiana Code of Civil Procedure and the benefits of Article 2331, 2722, 2723, and 2724 of the Louisiana Code of Civil Procedure."

Now, actually, we do not find this language in the mortgage; rather, the same language quoted in the N. B. Yarbrough, Jr. mortgage is used, but in either event (whether or not the provisions cited are applicable), it would appear that appellants certainly should have been alerted that the contention that Louisiana law controlled was being asserted. Not only that, but the trial record reflects that the attorneys for both sides consistently interrogated the parties about such matters as where the contracts were negotiated, where they were executed, where the property was to be used, etc. Certainly, the court understood that the issue was raised for it held in its decree that Louisiana law did apply. Yet, at no time during the trial, nor while the case was pending for decision—nor after the case was decided, did appellants ever raise to the trial court any question about having had no notice that appellees were relying upon Louisiana law. It thus definitely appears that they were aware of this issue, and we find no merit in the argument now presented.

As to the contracts between the parties, the evidence, in some instances is in conflict. We definitely know that the buyers were residents of Arkansas; that the sellers were residents of Louisiana; that the notes were assigned to a Louisiana bank; that the installment payments were to be made in Louisiana, and that the Log

Hog tractor and Beloit loader were used in Arkansas. Testimony was offered that the Massey-Ferguson tractor was used in both states. It is also undisputed that the first two machines were delivered in Arkansas, but the testimony is in conflict as to the last mentioned tractor. While N. B. Yarbrough, Sr. testified that he executed all agreements in Arkansas, he also subsequently stated that the loader was purchased "down there", definitely indicating the sale to have occurred in Louisiana. One interesting fact is that appellants stated that all three contracts were signed by them in Arkansas, and that the instruments signed were in blank at the time. Yet, all had been filled in and executed by Prentice Lee, which would be an indication that these agreements were finally executed in Louisiana. On the other hand, Lee testified that he signed the contracts for the Beloit loader and the Log Hog tractor in Arkansas and that the instruments had been completed at that time. The record contains many similar inconsistencies and in several instances, the parties did not seem at all sure of their facts. There is no particular act that would establish one state's contracts as being more significant than the other; there are however general principles which come into play. In *Cooper* v. *Cherokee Village Development Co., Inc.*, 236 Ark. 37, 364 S.W. 2d 158, this court said:

> "This court has consistently inclined toward applying the law of the state that will make the contract valid, rather than void. *Whitlock* v. *Cohn*, 72 Ark. 83, 80 S.W. 141; *Dupree* v. *Virgil R. Coss Mortgage Co., supra; American Farm Mtg. Co.* v. *Ingraham, supra; Wilson-Ward Co.* v. *Walker*, 125 Ark. 404, 188 S.W. 1184.

> This is not a case of a cloak for usury or where the parties to a wholly Arkansas contract have sought to avoid the Arkansas usury law by having the validity of the contract determined by the law of a state having no substantial connection with the contract."

Here too, we do not have a situation where the validity of the contract was determined by the law of a state having no substantial connection with such contract.

It is true that in *Hutchingson* v. *Republic Finance Co., Inc.,* 236 Ark. 832, 370 S.W. 2d 185, referring to *Cooper,* we said:

> "This statement is only applicable where ostensibly the law of either state could apply, or where there is doubt as to which properly does apply."

Appellants principally rely upon this last case, but the circumstances are far different. In *Hutchingson* the contract was solicited, negotiated, and entered into in this state and undisputedly, both Huchingson and the agent of Republic Finance Co., Inc., an Iowa Company, executed the contract here. All of the work under the contract was performed in Arkansas. We pointed out that the only circumstance favoring the company was a provision that the monthly payments should be sent to Des Moines. The facts in that case are far different from those here where the place of execution of the instruments by all parties is in dispute, and where it is clearly shown that a substantial part of the negotiations for the sale of this equipment took place in Louisiana.

Of equal, or greater importance, is the fact that the parties engaged in business with each other for a long number of years, in fact, since 1955, and during that period, eight or ten machines have been purchased by Yarbrough, Sr.; according to the evidence, the company had probably sold 25 tractors to all the Yarbroughs together. The proof thus reflects innumerable transactions between the parties including the acquiring of parts, and the repair of equipment. N. B. Yarbrough, Sr. said these various transactions were all handled satisfactorily and in an amicable manner. We find no specific evidence that these previous contracts were all similar to the ones here at issue, but it is difficult to conceive that the parties entered into these prior contracts with the intention that they be construed under the law of Arkansas, for, if that were the case, cancellation would likely have been previously sought. The course of extended dealings between the parties, to say the least, justifies an inference that the intention was to subject the agreements to Louisiana law.

At any rate, we certainly cannot say that the findings of the chancellor were against the preponderance of the evidence.

Affirmed.