SUMMERS, RECEIVER, *v.* CARBONDALE MACHINE COMPANY.

Opinion delivered January 11, 1915.

1. SALES—RESERVATION OF TITLE—CHANGE IN TERMS OF CONTRACT.—A vendor of personal property who sells the same with a reservation of title may grant an extension of time, or change the manner of payment without waiving his reservation of title, provided he did not thereby cancel the debt thus secured.

2. CONFLICT OF LAWS—CONTRACTS—PURCHASE OF PERSONAL PROPERTY. B. in Arkansas purchased machinery from C. in Pennsylvania. The order was accepted in Pennsylvania but delivery, acceptance

by purchaser, and payment of the notes was to take place in Arkansas. *Held,* the contract was to be performed in Arkansas, and the validity of its provisions is to be determined by the laws of this State.

Appeal from Woodruff Chancery Court, Northern District; *Edward D. Robertson,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

U. S. Bratton operated an ice plant at Augusta under the name of the Arkansas Public Service Company, and a creditor sued and recovered judgment against him, and at the instance of this creditor a receiver was appointed for the concern, who took charge of its assets, including the machinery used in making ice. Appellee filed an intervention in that suit, in which it claimed title to this machinery, under a reservation of title clause in the contract of sale. The contract price of this machinery was $4,500.00, and the court found that payments had been made which reduced this indebtedness to the sum of $3,345.00, and that Bratton had an equity in this property to the extent of his payments, and that equity was ordered sold, after the court had decreed that the title to the property had never passed from appellee. All of the creditors of this public service company resisted appellee's intervention, and have appealed from the decree of the court.

The contract of sale was a lengthy one and contained the following stipulation:

"The machinery and apparatus herein contracted for shall remain personal property and the title, ownership and right of possession to the same shall remain in us until full and final payment therefor, and of all notes, if any, shall have been made in cash.

"This proposal shall become a contract when accepted by you and approved in writing by the president and secretary of the Carbondale Machine Company, at its home office in the city of Carbondale, State of Pennsylvania."

It is urged, because of this stipulation, that the contract of sale is a Pennsylvania contract and should be construed according to the laws of that State and that,

if so construed, this reservation of title in invalid, because the laws of Pennsylvania provide that a contract retaining title is void as against creditors.

It is further contended that the machinery was not sold and delivered in accordance with the provisions of this written contract of sale, but that, upon the contrary, the terms and manner of payment were changed and this written contract thereby annulled, and that, therefore, there was no reservation of title. Under the terms of this written contract payments were to be made as follows: One-fourth cash upon shipment; one-fourth cash when the plant was ready to be charged with ammonia, after its installation; and the balance in two equal notes, bearing interest at 6 per cent., to be dated when the plant was ready to be charged with ammonia, and maturing at 60 and 120 days from date.

It was contemplated that the machinery should be shipped immediately after the approval of the order, but the shipment was delayed so that the machinery was not installed until August 25, and during this time a controversy over this delay was pending between Bratton and appellee. The contract of sale provided that Bratton was to deduct all freight charges and the expenses of erecting the plant from his last payment, and it was further provided therein that, upon the installation of the plant, Bratton was to give appellee an acceptance in writing showing an adjustment of any outstanding matters of dispute. This acceptance was made necessary by the following clause in the contract: "We agree and guarantee to construct the plant in all its parts in a thorough and workmanlike manner, using the best materials of their several kinds, and to deliver the plant to you upon completion." This acceptance in writing was to be given to show compliance with the conditions of the contract. This contract further provided that this machinery should be delivered f. o. b. cars Augusta, Arkansas.

Litigation over the delay in shipping the machinery was threatened, but a settlement was made by the terms

of which Bratton paid a fourth of the purchase money in cash, and executed notes for the balance, but deducted from the second note, instead of the last, the amount of the freight and installation costs.  These notes were not paid when due, and an extension of time was given for payment, and it is insisted that this extension of time, together with the changes in the terms of sale operated to waive the reservation of title.

The contract of sale was approved by appellee on June 5, 1913, on which date Bratton was notified that "We will ship immediately upon receipt of the signed contract which we are sending you today, or upon word from you that the same has been properly signed and mailed."  Bratton executed the contract of sale in duplicate and returned the original to appellee.

*Manning, Emerson & Morris,* for appellants.

1.  The contract was made under the laws of the State of Pennsylvania.  20 Fed. 357; 68 Fed. 467; 44 Ark. 230; 110 Ark. 123.

2.  The law of Pennsylvania provides that a contract retaining title is void as against creditors. 87 Fed. 976; 134 Fed. 924, 927; 139 Fed. 52; 166 Pa. 217; 31 Atl. 102, 105, 107; 64 Pa. St. 499; 92 *Id.* 53; 95 *Id.* 508; 108 *Id.* 481.

3.  Under the rules of private international law a contract is construed according to the law of the State where it is made.  13 Mass. 1; 7 Am. Dec.. 106, 108-9. Under the principle announced in the case just cited, when the contract was entered into, the parties must be presumed to have contracted with the laws of Pennsylvania in mind, and the appellee must be presumed to have known that its contract retaining title was of no effect as against creditors of the purchaser.

In considering this question, the substantive law is not to be confused with mere rules of procedure, for, though the law of the State where the contract is made, the *lex loci,* governs as to its nature, interpretation and construction, it is clear that the law of the State where

the action is brought, the *lex fori,* governs in all matters of mere procedure. 2 Mass. 84; 3 Am. Dec. 35-7; 91 U. S. 406; 23 Law Ed. 245; 44 Ark. 213; *Id.* 230-34; 4 Ark. 76; 46 Ark. 50, 66; 14 Ark. 610; 22 Ark. 125; 35 Ark. 261; 61 Ark. 1, 5; 70 Ark. 493; 107 Ark. 70, 73.

*Creditors, pro se,* and *Elmo CarlLee* for Bratton.

1. It is undisputed that Bratton from the first emphasized the fact that he must have the machinery by June 1; that on May 9 he advised appellee that time was of the essence of the contract, and that shipment was guaranteed in thirty days. Bratton's testimony further shows that his loss was at least $1,500.00 by reason of the delay in shipment of the machinery. He undoubtedly had a valid claim against appellee for damages. This claim was taken up with appellee's representative, and after certain negotiations an entirely new contract was made, Bratton waiving his claim for damages. No title was attempted to be retained in the new contract. Plain notes of hand were accepted for the amount due for the settlement, and in that manner the matter was closed up. Novation may be accomplished either by express or implied agreement, and the court erred in not holding that there was a new contract. 97 Pac. 438; 75 Atl. 920; 7 Ky. Law Rep. 358.

2. As to the rights of creditors and the effect of the attempt to retain title in the original contract under the laws of Pennsylvania, see argument on behalf of the receiver and Smith.

*Harry M. Woods,* for appellee.

In reply to the brief for Bratton and the creditors: (1) Bratton is contradicted by both witnesses, Holcomb and Roe. (2) He is contradicted by the contract and notes in existence, and by the fact that there is no change in the contract, except a minor one, which constitutes neither a deduction in price, interest or terms. (3) Bratton's letter of April 4, 1914, shows he recognized the possession in appellee under the written contract.

The deduction of the freight from the second note instead of the last, and the subsequent renewal of the notes to extend the time, under all the facts as shown by the testimony, did not accomplish novation. The testimony shows that there was no intention upon the part of either party to abrogate or set aside the written contract in the case. 29 Cyc. 1130-1135; 107 Ark. 337, 340.

1. The position of the appellants, that the *signature to the writing* is conclusive as to the *place of contract,* within the meaning of the term *lex loci contractus,* can not be maintained. The whole structure of their argument is based upon the fact that the contract could not be effective until signed by the appellee at Carbondale, leaving out of consideration the very nature of the agreement; that it was finally accepted in Arkansas by Bratton; that it was made with a view of performance in Arkansas; that the delivery was to be made f. o. b. cars at Augusta, Arkansas; that possession of the property was not delivered until erected and completed in Arkansas, and that the notes were dated and payable in this State.

The laws of this State control as to the place of performance of this contract. 2 Wharton on Conflict of Laws, 860-865; Story on Conflict of Laws, (8 ed.) 376; 2 Parsons on Contracts, (9 ed.) 734; Mechem on Sales, § § 648, 650; 35 Cyc. 93, 94; 80 Ark. 403; 64 Ark. 29; Tiedeman on Sales, 109; 46 Atl. 874; 93 Ala. 257; 161 S. W. 286; 57 N. J. 490; 86 Me. 456; 96 Ga. 489; 7 Atl. 418; 93 U. S. 664.

2. Under the laws of this State, conditional sales, such as is evidenced by the contract in this case, are valid as between the parties and as against innocent purchasers and creditors. 42 Ark. 363. Appellee retained title to the machinery, both as against Bratton, his receiver or creditors, and this court has held that such instruments are not mortgages. 48 Ark. 160; 60 Ark. 133.

SMITH, J., (after stating the facts). Two questions are presented. The first is, whether the change of method

of payments and extension of time for payments operated to waive the reservation of the title to the machinery. And the second question is, whether the contract of sale shall be construed according to the laws of this State, where a reservation of title is valid against creditors, or according to the laws of Pennsylvania, where such a reservation is invalid against creditors.

(1)    The first question is settled by the decision of this court in the case of *Hollenberg* v. *Bankston,* 107 Ark. 337. We there held, in effect, that a vendor might grant an extension of time, and might change the manner of payments, without waiving his reservation of title, provided he did not thereby cancel the debt thus secured.

The second is the real question in the case. Appellants lay stress upon the provision in the contract that it should not be binding "until accepted by you (Bratton) and approved in writing by the president and secretary of the Carbondale Machinery Company at its home office in the city of Carbondale, State of Pennsylvania." But the fact must not be lost sight of that, after its installation, the machinery was to be finally accepted in this State by Bratton and that the whole contract was made with a view to its performance in this State, where the purchase money notes were executed and dated and were made payable.

It is conceded that, if this contract is to be construed according to the laws of the State of Pennsylvania, the reservation of the title to the machinery is void as to the intervening creditors. But shall it be so construed?

The principle which controls here was discussed in the case of *Midland Valley Railroad Co.* v. *Morgan Bolt & Nut Mfg. Co.,* 80 Ark. 403, where it was said:

"'The place where an obligation originates is often accidental; is remote, sometimes receding from spot to spot, as we search for it; and is extrinsic to the essence of the engagement, and to its subsequent development and efficiency.' 2 Wharton, Conflict of Laws, § 398. 'It is different, however, with the place of performance,

which enters into the vitals of the obligation, so far as concerns its fulfillment.' *Id.* § 399.

"In this case there was an express agreement that part of the material should be delivered at Shady Point, I. T., by appellee to Kelly for use in construction of appellant's road in the Indian Territory, and part for like purpose for the road in Arkansas, at Montreal, Arkansas. Notwithstanding there is but one contract, when it is to be performed in different jurisdictions, the law of each jurisdiction enters into the essence of the performance in the respective jurisdictions. 2 Wharton on Conflict of Laws, § 815a. Therefore the law of this contract was in Arkansas for so much of it as was to be performed in Arkansas, and in the Indian Territory for so much of it as was to be performed in the Indian Territory. Wharton, *supra;* Story on Conflict of laws, § 280, and note."

(2) It appears that the order for the machinery was accepted by appellee in Pennsylvania and was shipped from that State; but everything else in connection with this transaction was to occur in Arkansas. The final delivery was to take place upon completion of the plant, when an acceptance was to be given. The provisions of the contract, including the payment of the notes, were to be performed here, and this State was, therefore, the place of performance of the contract, and the validity of its provisions will be construed according to the laws of this State.

The decree is therefore affirmed.