HEIDELBERG SOUTHERN SALES COMPANY *v.* TUDOR.

5-1636                                   316 S. W. 2d 716

Opinion delivered October 13, 1958.

*Virgil D. Willis* and *Marvin A. Hathcoat,* for appellant.

*John B. Driver* and *N. J. Henley,* for appellee.

SAM ROBINSON, Associate Justice.   The issue is whether a contract for the sale of a printing press is usurious.   On July 23, 1956, appellant, Heidelberg Southern Sales Company, sold a printing press to appellee, James R. Tudor, under a title retaining contract.   The purchaser made a part payment in cash and the balance was to be paid in monthly installments.   Tudor refused to make the monthly payments, and Heidelberg filed this suit to replevy the machine.   A jury was waived

and the cause submitted to the court. From a finding by the court that the sales contract is usurious, the Heidelberg Company has appealed.

The sales contract shows a selling price of $4,823.84, with $1,062 being paid in cash, leaving a balance of $3,-761.84, to be paid in 36 monthly installments with no interest. But this is not the entire picture. Ordinarily parol evidence is not admissible to vary the terms of a written contract, but there is an exception when such evidence is for the purpose of showing usury. *Tillar* v. *Cleveland,* 47 Ark. 287, 1 S. W. 516; *Prickett* v. *Williams,* 110 Ark. 632, 161 S. W. 1023; *Crisco* v. *Murdock Acceptance Corp.,* 222 Ark. 127, 258 S. W. 2d 551.

Here the trial court made a finding that the actual sales price was $4,250. From the evidence it does not appear that any other price was ever discussed. In fact, the invoice shows a selling price of $4,250, and a cash payment of $1,062, which would leave a balance owed of $3,188. The invoice also shows a finance charge of $573.84, and the entire balance to be paid in 36 monthly installments of $104.50 each. As pointed out by the trial court, this arrangement amounts to usury. *Crisco* v. *Murdock Acceptance Corp.,* 222 Ark. 127, 258 S. W. 2d 551.

In the case at bar the trial court said: ''From the pleadings and the testimony it appears that three written instruments were executed by the plaintiff in connection with this sale: First, the sales order dated July 13 signed by the defendant and by G. Martin as salesman; second, the conditional sales contract dated July 23, 1956; third, the invoice of the shipment. From these instruments and other evidence it appears that the basic cash price of the printing press was $4,250.00; that an old press was traded in and valued at $700.00 and that the defendant at that time paid $100.00 in cash leaving a balance due at the time the sales order was executed of $3,450.00. It is undisputed that the defendant later paid the additional sum of $262.00 in cash leaving a balance cash price of $3,188.00. This is the amount the

purchaser could have paid and discharged his full obligation to the plaintiff. However, as the contract indicates, he elected to pay the balance in 36 monthly payments. It was then that the sum of $573.84 was added to the net cash price as 'finance charges', making the total deferred payment $3,761.84. The question before the Court then is what goes to make up this sum of $573.84 and does it include an excessive amount of interest. The Court finds the interest on the net cash balance $3,188.00 for the three year period at the rate of 10 per cent per annum to be $507.58. Therefore, the amount of the finance charges is $66.26 in excess of the maximum rate of interest allowed.

''Since the contract and the other written instruments in connection therewith were prepared by the plaintiff and on forms furnished by it, the plaintiff had ample opportunity to set out in detail the amounts that constituted these 'finance charges', but it failed to do so. It is the opinion of the Court that the burden of explaining the various amounts that go into this finance charge rests upon the plaintiff, and in the absence of such explanation, the Court must assume that the entire amount is interest. The plaintiff's witness Mr. Huddleston did offer some explanation of this item and of what is included in the monthly payments when he stated that 'each installment covers a monthly payment of the value of the press itself, a part of the financing charge, Heidelberg Southern's monthly cost of overriding insurance carried by Heidelberg Southern until the buyer's obligation is fully discharged and pro-rated share of periodic service visits' . . . However, no definite amounts are given for any of these items, and the Court thinks that they do not meet the burden that rests upon the plaintiff to explain this 'finance charge'.''

In *Jones* v. *Jones,* 227 Ark. 836, 301 S. W. 2d 737, we pointed out in a similar situation that the trier of facts is ''justified in assuming, until he is convinced by proof to the contrary, that the difference between the principal of the loan and the face amount of the contract represents interest on the debt''.

Appellant next contends that the instrument involved is a Texas contract and that therefore the law of Texas should be applied, and that according to the law of that state the charge of a usurious rate of interest does not forfeit the principal. True, the order for the machinery was accepted in Texas, and it was shipped from that state, but the monthly installments were payable in New York, Chicago or San Francisco; the delivery and acceptance were performed in Arkansas, and the chattel, until paid for in full, was to be located in Arkansas, where fire insurance was to be carried and taxes were to be paid. In these circumstances, the place of performance of the contract was in this state, and the validity of its provisions will be construed according to the law of this state. *Summers, Rec'r.* v. *Carbondale Machinery Co.,* 116 Ark. 246, 173 S. W. 194.

Affirmed.