460 F.Supp. 1224 (1978)
In re Jimmy WAKEFIELD, Debtor.
HAWKINS EQUIP. CO., Plaintiff-Appellee,
v.
Bernard GOLDSTEIN, Trustee, Defendant-Appellant.
No. J-77-101-B.
United States District Court, E. D. Arkansas, Jonesboro Division.
December 1, 1978.
*1225 Don A. Forrest, West Memphis, Ark., for plaintiff-appellee.
Marc I. Baretz, West Memphis, Ark., for defendant-appellant.

OPINION
ARNOLD, District Judge.
The trustee seeks to void a security agreement under which the debtor, Wakefield, promised to pay Hawkins Equipment Co. for a backhoe. If the agreement is governed by the law of Arkansas, it is usurious and void. The Court below applied the law of Tennessee and upheld the agreement. This Court reverses.
The Bankruptcy Court found the facts as follows, and they are not in dispute. On May 23, 1975, Wakefield leased the backhoe from Hawkins. The lease was signed in Memphis, Tennessee. The backhoe was delivered to Wakefield in West Memphis, Arkansas. Rent was paid in Memphis. On August 26, 1975, Wakefield bought the backhoe, which had been continuously in his possession. There was a conflict of testimony as to where the contract of sale was signed, and no finding was made on this point. Arkansas sales tax was paid on the sale. The financing statement was filed in Arkansas. The interest rate agreed to was 16%. The papers refer to a charge for "delivery and set up," but in fact there was no such charge. This reference was a subterfuge designed to increase the allowable rate of interest.
The Court below was in doubt as to which law to apply. It selected Tennessee law because under that law usurious transactions are not void. The Court relied on Cooper v. Cherokee Village Dev. Co., 236 Ark. 37, 44, 364 S.W.2d 158, 162 (1963). There the Supreme Court of Arkansas stated that it had "consistently inclined toward applying the law of the state that will make the contract valid, rather than void."
In Cooper, however, the parties had expressly contracted for the application of foreign law. No such express agreement was made here. Other more recent cases are more nearly in point. In Huchingson v. Republic Fin. Co., 236 Ark. 832, 370 S.W.2d 185 (1963), a contract was signed to finance the installation of aluminum siding on a home near Benton, Arkansas. The parties signed the contract in Arkansas. Payments were to be made in Iowa. There was no agreement as to governing law. The trial court applied Iowa law, in order to uphold the contract. The Supreme Court reversed. The only Iowa contact was that payments would be made there, and that was not enough. The Court added:
Arkansas has a strong public policy on this subject, as indicated by the fact that the penalty against a seller or lender exacting usury is indeed heavy, and this court, particularly for the last 10 years, has been zealous in guarding against any attempt to evade our constitutional provisions relative to usury.
236 Ark. at 836, 370 S.W.2d at 187 (footnotes omitted).
In Lyles v. Union Planters Nat'l Bank, 239 Ark. 738, 393 S.W.2d 867 (1965), Arkansas law was again applied. Lyles, who lived *1226 in Memphis, bought a car in West Memphis. The sales contract was signed in West Memphis. Payments were to be made at West Memphis. There was no express agreement as to the governing law.
Another relevant case is In re Romine, 418 F.Supp. 19 (E.D.Ark.1976), rev'd on other grounds, 556 F.2d 895 (8th Cir. 1977). The debtor's place of business was in Arkansas. The lender sent representatives into Arkansas to discuss with the debtor an arrangement for financing his inventory. Some financing statements were signed in Arkansas, some in Missouri. The lender recognized that Arkansas law would govern, though the contracts contained no clause specifically selecting the law of any jurisdiction. This Court applied Arkansas law, and on that point the Court of Appeals agreed.
None of these precedents is controlling here, but this Court is of the opinion that the Supreme Court of Arkansas, if faced with this fact situation, would apply Arkansas law. To be sure, there are substantial Tennessee contacts. The original lease was signed there, and payments were to be made there. But the debtor lived and worked in Arkansas, and the equipment was to be used here. Had the parties expressly contracted for Tennessee law, their agreement would probably have been upheld. They did not. Indeed, Hawkins seems to have thought that Arkansas law would apply. Else why resort to the subterfuge of falsely adding in a delivery and set-up charge? Both parties knew the backhoe had already been delivered and set up.
If this were not a usury case, the result might be otherwise. This Court might remand for a determination of where the sales contract and security agreement were actually signed. But it is a usury case, and the Supreme Court of Arkansas has been zealous to protect our citizens against the exaction of interest in excess of ten per cent. The usury prohibition is in the Constitution of the State of Arkansas, and the people have recently declined to change it. Citizens living near the State's borders are entitled to just as much protection as are those not so often exposed to out-of-state sellers and lenders. Robert A. Leflar, Arkansas's most distinguished legal scholar, has written that this public-policy factor is the most important single criterion in choice-of-law cases involving usury:
This same factual analysis was unsuccessfully attempted by counsel in another usury case, Huchingson v. Republic Fin. Co., a few months later. The contract in this case had both Arkansas and Iowa contacts, though the Arkansas contacts were this time the more significant ones. The holding was that Arkansas law governed, and forfeiture for usury was enforced. The tendency to sustain contracts attacked for usury, referred to in the Cherokee Village case, was mentioned but distinguished, and emphasis was put on the "strong public policy" in Arkansas, developed "particularly for the last ten years", against all kinds of usury.
It is believed that the two cases, taken together, illustrate what really happens in difficult choice of law cases. The law of either state could have been applied in either case without violating federal constitutional limitations, since each state had substantial contacts with the facts. Superficially, the cases can be readily explained by employing a "center of gravity" or "most significant contacts" theory, such as is used in New York and in the new Restatement II. Actually, however, the "strong public policy" factor, spelled out by Chief Justice Harris in the Huchingson case, is of first importance. In general the public policy of Arkansas as of most other states favors the enforcement of contracts entered into by competent parties in good faith, and courts will usually select to govern such contracts the law of the substantially connected state which will uphold the contract. That achieves justice, the law's prime objective, as between the parties. But strong public policy does not necessarily favor the validity of every kind of contract. There are some contracts which are in Arkansas regarded as wicked and *1227 vicious, even though there be other states whose law might sustain them. Contracts in which the conduct of a usurer is particularly raw and unpalatable are among those which violate our strong public policy, and for the last ten years we have been inclined to extend this attitude to more and more types of usury. In such cases our policy does not favor sustaining the evil contract even though it might be logically possible to do so. If our court has free choice among various choice of law rules, it ought to (and does) exercise its choice to achieve results consonant with the truly basic policies which underlie our socio-economic system and therefore underlie our law.
Conflict of Laws  Arkansas, 1959-1964, 18 Ark.L.Rev. 135, 140-41 (1965).
Hawkins argues that it should prevail even if the contract is usurious. The debt was in fact paid, it says. That is, Wakefield returned the machine to Hawkins, and the debt was cancelled. The usury policy of this State is not so strong as to nullify an already executed contract. Payments once made cannot be recovered. The Court below did find that Hawkins had re-taken possession of the backhoe before the bankruptcy, so Hawkins's contention may have merit. The better practice is to leave this matter open for decision by the Bankruptcy Court on remand. Apparently only a question of fact will be involved.
The judgment will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.
IT IS SO ORDERED this 1st day of December, 1978.