ACLIN FORD COMPANY et al *v.* William G. CORDELL and Marlene CORDELL

81-153                                    625 S.W. 2d 459

Supreme Court of Arkansas
Opinion delivered December 7, 1981
[Rehearing denied January 11, 1982.]

*Rice, Batton & Pierce,* by: *Ben Rice; Smith & Nixon,* by: *W. R. Nixon, Jr.,* and *John Plegge,* for appellants.

*Lesly W. Mattingly,* for appellees.

*Barber, McCaskill, Amsler, Jones & Hale,* by: *Guy Amsler, Jr.,* amicus curiae.

GEORGE ROSE SMITH, Associate Justice. In February, 1980, the appellees, Mr. and Mrs. Cordell, bought a new car from Aclin Ford Company, the unpaid balance of the purchase price being payable in 48 monthly installments of $175 each. Aclin assigned the purchase contract to Ford Motor Credit Company. The Cordells brought this suit five months later to cancel the sale for usury. The chancellor canceled the contract, finding that the Cordells had been compelled to purchase credit life insurance in the trans-- action, that the $252 premium was part of the total amount to be financed, and that the inclusion of Aclin's 35% commission for selling the insurance pushed the interest rate past 10% per annum.

On direct appeal Aclin and the finance company separately argue that the chancellor was clearly wrong in finding the contract to be usurious. Despite the many cases cited by both sides in their briefs, the controlling principles of law are settled. If a buyer or borrower is compelled as a condition to the extension of credit to buy insurance on which the seller or lender receives a commission, the commission may be treated as interest in the determination of usury. *Strickler* v. *State Auto Finance Co.,* 220 Ark. 565, 249 S.W. 2d 307 (1952); *Wilson* v. *Whitworth* 197 Ark. 675, 125 S.W. 2d 112 (1939). On the other hand, if the buyer or borrower voluntarily agrees to the purchase of the insurance and the premium is not excessive, the commission is not to be considered as interest. *Winkle* v. *Grand Nat. Bank,* 267 Ark. 123, 139-F, 601 S.W. 2d 559 (1980), cert denied 449 U.S. 880 (1980); *Poole* v. *Bates,* 257 Ark. 764, 520 S.W. 2d 273 (1975).

Here the central issue was one of credibility as between interested witnesses. Mrs. Cordell testified that she told the Aclin salesman she did not want credit life insurance, but the salesman went into the office (presumably to check with Horton, the manager) and came back saying, "You have to have the credit life insurance." Cordell testified that he commented that the insurance was not worth having, but the salesman said, "You've got to have it." Horton and the salesman testified that the purchase of credit life insurance was not required, but the salesman admitted he had never sold a car to be financed with Ford Motor Credit Company without such insurance. The Aclin company had a pecuniary interest in selling the insurance on a commission basis rather than allowing the purchasers to reject it or to buy it through a third person. The chancellor stated that he had intently studied each witness, had considered the interest of each, and had concluded that the testimony justified, "in fact requires," a finding that the Cordells were opposed to the credit life insurance, but assented to it only because "it was the only way the 'deal could go through.' " We cannot say that the chancellor's finding is clearly erroneous.

The appellants' subordinate arguments require little

comment. Even though the Cordells signed a printed form of election to take the insurance, parol evidence is admissible to show usury. *Heidelberg Southern Sales Co.* v. *Tudor,* 229 Ark. 500, 316 S.W. 2d 716 (1958). Aclin also argues that under decisions such as *Universal C.I.T. Credit Corp.* v. *Lackey,* 228 Ark. 101, 305 S.W. 2d 858 (1957), the finance company rather than Aclin was the lender. The distinction is immaterial, for a retailer selling on credit is receiving interest for his forbearance in collecting the debt and is therefore subject to the laws governing usury. *Sloan* v. *Sears, Roebuck & Co.,* 228 Ark. 464, 308 S.W. 2d 802 (1957). The Cordells' contract was usurious as to both the seller and the credit company.

The Cordells' cross appeal brings up a completely different aspect of the case. After the couple bought the car they became dissatisfied with its performance and with what they regarded as Aclin's unwillingness or inability to repair it. Finally the Cordells resorted to picketing Aclin by displaying signs at a point near the company's place of business. One of the signs, for example, read: "Want a junk or a lemon, buy a car from Aclin Ford." In the course of the picketing, which continued for 25 days, there was a physical encounter between Mrs. Cordell and an Aclin salesman over the possession of a photograph which the salesman had just taken. Other salesmen were also involved in exchanges of verbal insults, with the witnesses for each side testifying that they themselves acted with impeccable decorum in the face of the foulest possible epithets resorted to by their adversaries. The chancellor did not award any compensatory or punitive damages upon the various tort claims asserted by Aclin and by the Cordells. Aclin has not appealed from the denial of its claim, but the Cordells argue three points on their cross appeal.

First, the Cordells challenge the chancellor's finding that the parties were equally at fault in the physical encounter. There was undoubtedly a loss of temper on both sides during the course of the picketing, so much so that in many respects the litigation became what lawyers call a swearing match. We are not convinced that the chancellor's conclusion was plainly wrong.

Second, the Cordells question the chancellor's finding that the Aclin salesmen were not acting within the scope of their employment in making slanderous remarks to Mrs. Cordell, it being charged that they called her a bitch and a whore. The ultimate question was whether the salesmen were acting in the futherance of their employer's business in their altercations with Mrs. Cordell. Prosser has summed up the problem: "The most difficult questions arise where the servant, for strictly personal reasons and not in furtherance of his employment, loses his temper and attacks the plaintiff in a quarrel which arises out of the employment. . . . Here, unless some non-delegable duty can be found, the older rule denied recovery, and this is still the holding of the majority of the decisions." Prosser, Torts, § 70 (4th ed. 1971). We express no opinion about any possible trend in the authorities, it being sufficient for us to say that the chancellor would not have been clearly wrong in deciding the issue either way.

Third, Mrs. Cordell argues that the chancellor was in error in holding that she was not entitled to recover for Aclin's wrongful interference with her constitutional right to freedom of expression. The guaranty of free speech is a restriction upon governmental action, not upon the action of individuals. *Lloyd Corp.* v. *Tanner,* 407 U.S. 551 (1972); *Central Hardware Co.* v. *N.L.R.B.,* 407 U.S. 539 (1972); *Public Utilities Comm'n.* v. *Pollak,* 343 U.S. 451 (1952). The appellant cites no authority to support her claim. We conclude that any recovery would have to be based upon tort law, not upon the Constitution. Moreover, the chancellor correctly noted that no such cause of action was asserted in the appellants' pleadings.

We observe in closing that this case is unusual in that the chancellor's equitable jurisdiction to cancel the contract also drew the various tort claims into a court of equity. In the circumstances the chancellor may well have viewed the case as a whole and concluded that justice would be achieved by relieving the Cordells of the greater part of their debt on the contract and at the same time denying their tort claims. If that was in fact the chancellor's conclusion, we do not think he was wrong.

Affirmed.