714 F.2d 799
 TIFFANY INDUSTRIES, INC., d/b/a Superior Equipment
Manufacturing Company, Appellee,
v.
COMMERCIAL GRAIN BIN COMPANY, INC. and Jim T. McDaniel, Appellants.
Al Arcand, James D. Carr and Thomas Sprinkle.
 No. 82-2063.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Aug. 4, 1983.
Decided Aug. 15, 1983.
 
 Steinberg & Crotzer, Darold E. Crotzer, Jr., Michael E. Gans, Clayton, Mo., Penix, Penix, Mixon & Lusby, Donn Mixon, Jonesboro, Ark., for appellee.
 Bill D. Etter, Jonesboro, Ark., for appellants.
 Before HEANEY, BRIGHT and FAGG, Circuit Judges.
 PER CURIAM.
 
 
 1
 Tiffany Industries, Inc., d/b/a Superior Equipment Manufacturing Company (hereinafter "Tiffany") contracted with Commercial Grain Bin, Inc. and its president Jim McDaniel (hereinafter jointly referred to as "McDaniel") to market, sell, and distribute Tiffany's grain bins. Tiffany shipped merchandise to McDaniel and billed on open account. When the account became delinquent, Tiffany sued McDaniel in the United States District Court for the Eastern District of Arkansas. The district court entered judgment for Tiffany. McDaniel appeals contending the district court erred in finding (1) that the agreement between the parties was an Illinois contract and not an Arkansas contract which would be void as usurious under Arkansas law, and (2) that McDaniel was liable to Tiffany for contract debts it had assumed from another construction company, DeArc Steel. We affirm.
 
 
 2
 Early in 1978, Al Arcand, the president of DeArc Steel, introduced McDaniel to Clarence Hendrain, a Tiffany vice-president in charge of setting up dealerships for Tiffany's grain bins. The men discussed the possibility of McDaniel's Big Mac Construction Company taking over some of DeArc's contracts with Tiffany and becoming a Tiffany dealer. The meeting took place in Jonesboro, Arkansas, as did several later negotiation sessions. In March 1978, McDaniel toured the Tiffany manufacturing facility in Mattoon, Illinois. In June 1978, William Lorton, Tiffany's vice-president of marketing, visited McDaniel in Jonesboro. He invited McDaniel to Mattoon to meet with Tiffany's chief executive officer. McDaniel met with Tiffany executives in Illinois on June 30, 1978. During the meeting, McDaniel was given a Tiffany dealership agreement and UCC security form. McDaniel took these documents back to Arkansas to have his attorney review them. He signed them in Arkansas and returned them to Tiffany two or three weeks later.
 
 
 3
 During the next year, Tiffany shipped merchandise from Illinois to Arkansas. McDaniel worked on completing contracts he had assumed from DeArc Steel for erection of Tiffany grain bins in Arkansas. McDaniel made some payments to Tiffany, but used most of the money that came in to offset cash flow problems. In September 1979, Tiffany sued McDaniel for the amount owed on its open accounts plus service charges of 1.5% per month or 18% per annum. McDaniel raised the affirmative defense of usury. Under Arkansas law, contracts carrying interest rates of over 10% per annum are void. Ark.Const. Art. 19, § 13; Ark.Stat.Ann. §§ 68-602, 603 (1979). McDaniel also contended neither he nor his company was liable for that portion of the account initially charged to DeArc Steel since he did not assume or guarantee DeArc's accounts with Tiffany.
 
 
 4
 The district court concluded that the contract between the parties was essentially an Illinois contract, governed by Illinois law. The court reasoned that the most important contacts between the parties occurred in Illinois. Concerning the issue of McDaniel's liability for DeArc Steel's debts to Tiffany, the court found that McDaniel agreed at the June 30 meeting that he and his company would assume and guarantee DeArc's debts. The court awarded judgment in favor of Tiffany, and this appeal followed.
 
 
 5
 Tiffany argues that even if Arkansas law applies to this contract, the 1.5% monthly service charge on McDaniel's account was a "late charge" or penalty for delinquency which did not render the transaction usurious under Arkansas law. See Hayes v. First National Bank of Memphis, 256 Ark. 328, 331, 507 S.W.2d 701, 703 (1974). The Arkansas Supreme Court has held, however, that service charges which exact a percentage of the balance due on an open account are interest charges subject to the Arkansas anti-usury provisions. Superior Improvement Co. v. Mastic Corp., 270 Ark. 471, 475, 604 S.W.2d 950, 952-53 (1980); Bunn v. Weyerhaeuser Co., 268 Ark. 445, 449, 598 S.W.2d 54, 56 (1980). Thus, the contract between the parties would be void as usurious under Arkansas law.
 
 
 6
 The primary question presented in this appeal is whether the district court erred in concluding that the Arkansas courts would apply Illinois law to the agreement between the parties. Arkansas does not have a single criteria for determining choice of law in contract cases. In Cooper v. Cherokee Village Development Co., 236 Ark. 37, 43, 364 S.W.2d 158, 161 (1963), the Arkansas Supreme Court noted the three traditional alternatives: the law of the state in which the contract was made; the law of the state where the contract is performed; and the law of the state which the parties intend to govern the contract, provided that state has a substantial connection with the contract. In addition, later cases seem to apply the "significant contacts" or "center of gravity" test relied on by the district court in this case. Standard Leasing Corp. v. Schmidt Aviation, 264 Ark. 851, 855-56, 576 S.W.2d 181, 184 (1979). See also E. Scoles & P. Hayes, Conflict of Laws § 18.21 (1982). The significant contacts test is particularly appropriate in this case because the parties did not stipulate to the governing law, and it appears the contract was made in Illinois, but performed in Arkansas.
 
 
 7
 McDaniel first contends the district court clearly erred in finding the agreement between the parties was reached in Illinois. He argues that he and Hendrain agreed that his company would become a Tiffany dealership during their negotiations in Arkansas prior to March 28, 1978. The district court acknowledged that Hendrain probably represented to McDaniel that he had the authority to make McDaniel a Tiffany dealer. The court found, however, that any agreement reached by McDaniel and Hendrain in Arkansas was too vague to form the basis of a contract, and, at any rate, the June 30 negotiations in Illinois superseded prior discussions. The district court's finding is supported by an inter-office memorandum circulated at Tiffany after the June 30 meeting stating that Tiffany executives had reached a dealership agreement with McDaniel. In addition, Tiffany did not start shipping merchandise to Arkansas until after the Illinois meeting. Thus, there is sufficient evidence to support the district court's finding that the contract was made in Illinois.
 
 
 8
 McDaniel further argues that even if the district court was correct in placing the actual making of the contract in Illinois, Arkansas law should still apply because significant contacts link the transaction to Arkansas. The Tiffany dealership was to be located in Arkansas and McDaniel used the Tiffany products to fulfill sales and erection contracts in Arkansas. McDaniel points out that Tiffany first contacted him in Arkansas where all but the final negotiations occurred. In addition, McDaniel lives in Arkansas, the goods were shipped to Arkansas where Arkansas sales tax was paid, and McDaniel signed the dealership agreement in Arkansas and filed the UCC agreement there.
 
 
 9
 Arkansas case law somewhat supports McDaniel's contention. In particular, the place of contract performance seems to be an important consideration in determining choice of law in Arkansas contract cases. See In re Wakefield, 460 F.Supp. 1224, 1226 (E.D.Ark.1978), aff'd sub nom. Hawkins Equip. Co. v. Goldstein, 603 F.2d 222 (8th Cir.1979); Heidelberg Southern Sales Co. v. Tudor, 229 Ark. 500, 502, 316 S.W.2d 716, 718 (1958). Moreover, Arkansas' strong public policy against usury weighs in favor of applying Arkansas law to invalidate a usurious contract. In re Wakefield, supra, 460 F.Supp. at 1226; National Surety Corp. v. Inland Properties, 286 F.Supp. 173, 188 (E.D.Ark.1968), aff'd, 416 F.2d 457 (8th Cir.1969); Huchingson v. Republic Finance Co., 236 Ark. 832, 836, 370 S.W.2d 185, 187 (1963).
 
 
 10
 Arkansas case law also, however, supports the district court's application of Illinois law. The most important factor favoring the application of Illinois law is that the parties entered into the contract in Illinois. See Brooks v. Universal CIT Credit Corp., 431 F.2d 238, 241 (8th Cir.1970); Lyles v. Union Planters Nat'l Bank of Memphis, 239 Ark. 738, 739, 393 S.W.2d 867, 869 (1965); Huchingson v. Republic Finance Co., supra, 236 Ark. at 835, 370 S.W.2d at 186. In addition, the written documents were ultimately accepted in Illinois where McDaniel's credit was approved, Tiffany manufactured and shipped the goods from Illinois, and the place of payment was Illinois. As the district court noted, applying Illinois law to this contract also furthers the state's interest in enforcing contracts. See Cooper v. Cherokee Village Development Co., supra, 236 Ark. at 44, 364 S.W.2d at 162. Finally, the district court found Tiffany did not seek to evade the Arkansas usury law in setting up the contract.
 
 
 11
 Although we consider the choice of law question in this case a close one, in the end we defer to the trial court's interpretation of local law. It is axiomatic that we give great weight to the district court's construction of state law in diversity cases. Zrust v. Spencer Foods, 667 F.2d 760, 764 (8th Cir.1982); Hunter v. United States, 624 F.2d 833, 837 (8th Cir.1980); Foremost Ins. Co. v. Sheppard, 610 F.2d 551, 554 (8th Cir.1979). We cannot say the court's choice of law is "fundamentally deficient in analysis or otherwise lacking in reasoned authority." Ancom Inc. v. E.R. Squibb & Sons, 658 F.2d 650, 654 (8th Cir.1981). We therefore uphold the district court's choice of Illinois law.
 
 
 12
 McDaniel also challenges the district court's finding that he assumed and personally guaranteed DeArc Steel's account. McDaniel phrases the issue as Tiffany's failure to prove a novation substituting McDaniel as debtor in place of DeArc. As Tiffany points out, the existence or nonexistence of a novation was never in issue at trial. At trial, McDaniel denied that he and his company agreed to assume and guarantee the indebtedness of DeArc to Tiffany. He also asserted that any such agreement was not supported by consideration.
 
 
 13
 The district court found that McDaniel agreed at the June 30 meeting to assume and guarantee the indebtedness of DeArc in exchange for DeArc's contracts with Tiffany. Ample evidence supports this finding. Tiffany's Vice-President Lorton testified that Tiffany required McDaniel's guarantee in order to allow him to establish a line of credit at Tiffany. Tiffany submitted signed documents to the court showing that DeArc Steel assigned the three contracts in question to McDaniel. McDaniel completed these projects and collected some of the payments due, but failed to pass on to Tiffany the amount owed it for the merchandise supplied for the projects. Furthermore, Tiffany sent McDaniel DeArc's outstanding invoices until March 1979 and then started including that amount on McDaniel's statements. McDaniel did not question these billings. The district court's finding that McDaniel assumed and guaranteed DeArc's debts is not clearly erroneous.
 
 
 14
 In conclusion, although we consider the choice of law issue in this case a close one, we defer to the district court's interpretation of local law. In addition, we conclude that the district court's finding that McDaniel assumed and guaranteed DeArc's debts is not clearly erroneous. Accordingly, the district court's judgment is affirmed.