C. Trey Ashcraft, Chairman Jefferson County Board of Election Commissioners Post Office Box 5292 Pine Bluff, Arkansas 71611-5292
Dear Mr. Ashcraft:
I am writing in response to your request for my opinion on the following questions:
 1. When private property is offered for public use as a polling site, does the private property owner, or their operating representative, retain control of those portions of their private property not engaged in the government function (i.e., areas other than the actual polling site, area outside the 100' boundary from the primary entrance, a reasonable portion of the adjacent parking lot and driveway from the public roadway into the parking lot)?
 2. Is a private property owner required to permit posting of campaign signs on their private property? If they are, can the property owner restrict the location of campaign materials? Is a private property owner required to permit candidates and/or their campaign workers to campaign on their private property? If they are, can the property owner restrict the location of those campaigning?
 3. Can the private property owner cede control of the parking lot adjacent to the entrance of the polling site to the jurisdiction of the County Board of Election Commissioners during hours of voting for the purpose of ensuring sufficient parking is available for voters? *Page 2 
RESPONSE
Your first question is vague to the extent that you have failed to indicate what variety of private property you are referencing, ranging potentially from a homestead to a private university or shopping mall that has historically been a forum for political speech. Not being a finder of fact, I cannot determine whether property in any particular instance might be have been rendered public for purposes of allowing electioneering activity by any particular entity. I will note, however, that private property designated by an election commission as a polling site would in all likelihood qualify as a public forum subject to electioneering activity, subject only to the statutory restriction that no electioneering may occur within 100 feet of the polling site entrance — a restriction that the United States Supreme Court has upheld as constitutional. Having offered this opinion, I must note that I have found no authority for the proposition that the owner of private property, in acceding to the use of only a portion of his property as a polling place, has in effect acceded to the use of his entire property as a public forum open to electioneering activities. With respect to your second question, in my opinion, an owner of private property may restrict campaign activity on property he or she has not agreed, by arrangement with a local election commission, will be used as a polling place. In my opinion, an owner of private property who has devoted all or a portion of that property as a polling place will be prohibited from barring reasonable electioneering activity on the area designated as a polling place, again subject to the 100-foot restriction referenced above. In my opinion, the answer to your third question is "yes."
Question 1: When private property is offered for public use as apolling site, does the private property owner, or their operatingrepresentative, retain control of those portions of their privateproperty not engaged in the government function (i.e., areas other thanthe actual polling site, area outside the 100' boundary from the primaryentrance, a reasonable portion of the adjacent parking lot and drivewayfrom the public roadway into the parking lot)?
In my opinion, assuming that the property is indeed "private" in the sense that its owner has not offered it up as a forum for public debate, the answer to this question is, in all likelihood, "yes," but only to the extent that the property "not engaged in the government function," pursuant to the property owner's direction, has been excluded from "public" status and does not fall within the election commission's designation of a polling place. *Page 3 
As you note in your statement of background facts, this issue was addressed in Op. Att'y Gen. No 84-161, in which one of my predecessors reviewed the pertinent law regarding election-related activities that must be allowed on private property that is being used for the public purpose of conducting an election. I will not here reproduce my predecessor's analysis, with which I fully concur, subject only to the proviso discussed immediately below.
In the course of his opinion, my predecessor drew the following conclusion: "The fact that the private landowners allowed the County Election Commissioners to designate a place on their property as a polling place makes this a public forum for the day."[1] In my opinion, this conclusion is correct to the extent that the referenced "public forum" is the "place" designated "as a polling place," not necessarily the entirety of a private landowner's property. As my predecessor's formulation suggests, the use of private property as a polling site will necessarily be voluntary on the part of the landowner, who may obviously dictate what portion of his property will temporarily lose its private character during the process of voting. In my opinion, the "public forum" in such an instance will comprise the area that the private landowner has agreed to make available and that the election commission has approved as suitable.[2] *Page 4 
You have underscored in your request the following excerpt from my predecessor's opinion:
 When private persons engage in governmental functions, then they subject themselves to the same limitations on their freedom of action as would be imposed by the State.
As reflected in my predecessor's analysis, these limitations entail that the private property owner indeed engage in "governmental functions" — i.e., allow the voting public, in accordance with an election commission's accession thereto, to use private property as a polling site. I have found no authority in any jurisdiction for the proposition that the owner of private property, in acceding to the use of a portion of his property as a polling place, has in effect acceded to the use of his entire property as a public forum open to electioneering activities.
In Burson, 504 U.S. at 198, the United States Supreme Court explained that laws establishing campaign-free zones around polling places in effect barred speech in "quintessential public forums," thus triggering strict scrutiny whereby the law must qualify as "necessary to serve a compelling state interest and . . . narrowly drawn to achieve that end" (quoting Perry Ed. Ass'n v. Perry Local Educators'Ass'n, 460 U.S, 37, 45 (1983)). In Burson, the Court upheld the constitutionality of a Tennessee law that prohibited all campaign activity within 100 feet of a polling place. 504 U.S. at 211.[3] *Page 5 
With respect to private property outside this 100-foot radius, the operative question is whether the general public has any right to engage in political speech by engaging in such activities as posting campaign signs and distributing campaign materials. In my opinion, the answer to this question would be "yes" only with respect to those portions of the property that the owner had allowed the election commission to designate as a part of the polling location. Absent any such authorization, I believe the private property owner's property outside the polling location would remain precisely that — private — and as such subject to the same restrictions upon electioneering that any owner of private property might choose to impose.
By way of preface to your questions, you have quoted extensively from Op. Att'y Gen. No. 84-161, focusing particularly on the following response to a question whether an owner of private property containing a polling site can order a person to leave the property because he is gathering petition signatures thereon:
 The first question cannot be answered without analyzing the difference between an individual's interest in private property compared with private property interest when the property is used for a public function. The Arkansas Constitution states: *Page 6 
 The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefore. Art. 2 § 22 Ark. Const.
 Furthermore, the right of an individual to hold and enjoy property free from interference of trespassers is one of the most precious rights enjoyed by the citizens of this State. However, the more an owner opens up his property for use by the public in general, the more his rights become circumscribed by statutory and constitutional rights of those who use the property. Marsh v. Alabama, 326 U.S. 496 (1946). When private persons engage in governmental functions then they subject themselves to the same limitations on their freedom of action as would be imposed upon the State.
As this passage reflects, the right of property in Arkansas is particularly sacrosanct, being both "before" and "higher" than any right memorialized even in the constitution itself. The strength of this right was discussed in Op. Att'y Gen. No. 90-221, in which one of my predecessors addressed whether a person could circulate nominating petitions on various categories of private property that nevertheless entertained significant public traffic — namely, private universities, fairgrounds, shopping centers, businesses and hospitals. My predecessor, with whom I fully concur, in considering perhaps the most public of these forums — a shopping mall — offered the following conclusion:
 [T]he [Supreme Court] in my opinion would still be bound to balance the initiative rights of the people against the property rights of private landowners. This balancing would have to take into account the language of Arkansas Constitution, Art. 2, 22, i.e., "[t]he right of property is before and higher than any constitutional sanction. . . ."[4] In my opinion, under a balancing test, the private property right would likely be deemed superior. *Page 7 
 It is thus my opinion, in light of our particular constitutional provisions, that it is unlikely that our Supreme Court would construe them to afford a constitutionally protected right to solicit initiative or referendum signatures in a privately owned shopping mall. Of course, our Supreme Court has never addressed this issue, and is free to interpret our Constitution as it deems appropriate. It is my opinion, however, that in light of the particular wording of our state constitutional provisions, (including the probable necessity of state action, and the strong protection of property interests afforded), that the court would likely find no constitutionally protected right to solicit signatures in a private shopping mall.
You have not specified in your question what variety of private property is at issue, with the extremes ranging from a purely private homestead to the highly accessible sorts of private property discussed in my predecessor's opinion.
As one of my predecessors noted in Op. Att'y Gen. No. 96-318:
 The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech . . ." See City of Ladue v. Gilleo, 512 U.S. ___, 129 L.Ed.2d 36 (1994). The Fourteenth Amendment makes this limitation applicable to the States and to their political subdivisions. Id. The limitations of the First and Fourteenth Amendments, however, are not applicable to actions by the owner of private property used only for private purposes. Central Hardware Co. v. NLRB, 407 U.S. 539 (1972); see also Acklin Ford Co. v. Cordell, 274 Ark. 341, 625 S.W.2d 459 (1981). Nevertheless, the United States Supreme Court has recognized that while state statutes and constitutions may not impinge upon federal constitutional rights, states have the authority to adopt in their own constitutions or statutes individual liberties more expansive than those conferred by the federal constitution. Pruneyard Shopping Center v. Robins, 447 U.S. 74 (1980). Thus, with regard to private property used only for private purposes, it must be determined whether the Arkansas Constitution provides safeguards that protect the "speech" at issue.
 * * * *Page 8 These safeguards were addressed in Opinion No. 1990-221 where this office stated that "it is my best legal judgment . . . that assuming the First Amendment to the United States Constitution
grants no constitutional protections for the exercise of initiative and referendum signature collecting on private property, our own state constitutional provisions will likely not either." . . . It should be noted, however, that this office opined that Arkansas Constitution Art. 2, §§ 4 and 6, and Amendment 7 are intended to provide protections against the actions of the government, and not the actions of a private landowner seeking to exclude others from his property. See Op. Att'y Gen. No. 1990-221. This office also opined that the strong language of Arkansas Constitution Art. 2, § 22 contributed to the conclusion. Article 2, § 22 provides in part: "The right of property is before and higher than any constitutional sanction."
In Ladue, the Court noted the "special respect for individual liberty in the home" — a principle it noted "has special resonance when the government seeks to constrain a person's ability to speak there."[5] As the Supreme Court noted in Kaiser Aetna, supra
note 4, one aspect of this privilege to speak upon one's property is the right to foreclose others from doing so, at least unless the owner of private property has voluntarily opened the property as a public forum, which is precisely what occurs when an election commission, with the property owner's consent, designates all or a portion of private property as a polling place. As regards any property that has not been so designated, however, the property owner retains the strong right of control solemnized in the state constitution. *Page 9 
Question 2: Is a private property owner required to permit postingof campaign signs on their private property? If they are, can theproperty owner restrict the location of campaign materials? Is a privateproperty owner required to permit candidates and/or their campaignworkers to campaign on their private property? If they are, can theproperty owner restrict the location of those campaigning?
As reflected in my response to your first question, to the extent that the owner of property has acceded to the designation of property by the election commission as a polling place, that property should be available for the reasonable posting of campaign signs, subject only to the above discussed proscription against electioneering within 100 feet of the entrance to the polling site. Any privately held property that has not been designated as a polling place would be subject to the owner's constitutional right to prohibit political speech thereon.
Question 3: Can the private property owner cede control of theparking lot adjacent to the entrance of the polling site to thejurisdiction of the County Board of Election Commissioners during hoursof voting for the purpose of ensuring sufficient parking is availablefor voters?
In my opinion, the answer to this question is "yes." Implicit in the concept of designating a polling site is allowing the public convenient access thereto. One aspect of such access is convenient parking nearby the site itself. So long as the private property owner owns the parking lot, I know of no reason why the owner could not cede control of the lot to a county board of election commissioners.[6] *Page 10 
Indeed, assuming the lot would provide the only convenient parking, a county board of election commissioners might well condition its approval of the polling site upon the lot being made available for public parking on Election Day.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Subsection 7-1-101(22) of the Arkansas Code (Supp. 2009) defines a "polling site" as "a location selected by the county board of election commissioners where votes are cast."
[2] In Op. Att'y Gen. No. 92-144, one of my predecessors invoked Opinion No. 84-161 in support of the conclusion "that a private institution cannot exclude persons from exercising protectedFirst Amendment rights on private property, when such property is being used as a polling place." Again, this conclusion was apparently based upon the fact that the private property, whether in whole or in part, was indeed designated a "polling place" by the election commission.
Section 7-1-103(a)(9) of the Arkansas Code (Supp. 2009) establishes a 100-foot zone around the entrance of a polling site within which all electioneering activity is forbidden. Significantly, this statute makes no distinction between public and private property falling within the referenced 100-foot radius of a polling-place entrance. In Op. Att'y Gen No. 93-306, one of my predecessors, relying uponBurson v. Freeman, 504 U.S. 191, 196-97 (1992) and various other case law, offered the following conclusion in response to a request whether an election commission could designate as a polling place property located within 100 feet of private property on which the owner intends to place campaign signs:
 Your question assumes that such signs will be posted on private property and that they may not be removed by law enforcement officials enforcing the limitation to which you refer. You therefore ask whether it is lawful to conduct an election at such a polling place. It is my opinion, however, that it is unlawful to post political signs on Election Day on private property which is within the one-hundred foot limitation.
[3] In Op. Att'y Gen. No. 91-337, which predated the Court's opinion in Burson, one of my predecessors speculated that the materially indistinguishable Arkansas statute discussed above, A.C.A. § 7-1-103(a)(9), might be "constitutionally suspect" in barring campaign activity within a 100-foot radius of the entrance to a polling site. My predecessor noted, however, that the Burson
case was then pending and recognized the possibility, since realized, that the Court might deem such a restriction constitutional.
My predecessor further addressed the possible application of Ark. Const. amend. 7, currently incorporated in Ark. Const. art. 5, § 1, which provides in pertinent part that "[n]o law shall be passed to prohibit any person or persons from giving or receiving compensation for circulating petitions, not in any manner interfering with the freedom of the people in procuring petitions[.]" My predecessor noted as follows:
 This office has previously opined that our Arkansas Supreme Court, if ever faced with the question, would construe the particular provision of Amendment 7 to which you cite, as "coextensive" with the First Amendment:
 That is, [Amendment 7] provide[s] protection against governmental interference with free speech and petition rights in public forums subject to reasonable time, place and manner restrictions. It is my opinion that our Arkansas Supreme Court would not construe the language of Amendment 7 (`no law shall be passed to prohibit the circulation of petitions, nor in any manner interfering with the freedom of the people in procuring petitions') as abrogating the right of [the state] to fashion reasonable time, place and manner restrictions. That is, it is my opinion that the court would not construe that language as granting an unlimited right of the people of Arkansas to collect signatures [in public forums] in any area, at any time, and in any manner they wished, no matter what the disruption to [state] purposes would be.
(Quoting Op. Att'y Gen. No. 90-221).
Several other state constitutional provisions might further be implicated in your question, albeit perhaps tangentially. For instance, Ark. Const. art. 2, § 4 provides:
 The right of the people peaceably to assemble to consult for the common good, and to petition, by address or remonstrance, the government, or any department thereof, shall never be abridged.
Article 2, § 6 of the Arkansas Constitution further provides:
 The free communication of thoughts and opinion is one of the invaluable rights of man; and all persons may freely write and publish their sentiments on all subjects, being responsible for the abuse of such right.
[4] See Kaiser Aetna v. United States,444 U.S. 164, 176 (1979) (holding that "one of the most essential sticks in the bundle of rights that are commonly characterized as property" is "the right to exclude others").
[5] Id. at 58. See also Hill v. Colorado,530 U.S. 703, 786, 120 S.Ct. 2480 (2000):
 In City of Ladue v. Gilleo, 512 U.S. 43 (1994), we considered a challenge to a municipal ordinance prohibiting, inter alia, "such absolutely pivotal speech as [the display of] a sign protesting an imminent governmental decision to go to war." Id., at 54. Respondent had placed a sign in a window of her home calling "For Peace in the Gulf." Id., at 46. We invalidated the ordinance, finding that the local government "ha[d] almost completely foreclosed a venerable means of communication that is both unique and important." Id., at 54. The opinion . . . was also careful to note the importance of the restriction on place imposed by the ordinance in question: "Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means." 512 U.S., at 56. So, too, did we stress the importance of preserving the means citizens use to express messages bearing on important public debates. See id., at 57 ("Residential signs are an unusually cheap and convenient form of communication[,] [e]specially for persons of modest means or limited mobility . . .").
[6] I should note, however, that ceding control of a parking lot would not automatically render the parking lot a public forum for purposes of exercising political speech. As the court noted in Poniktera v.Seiler, 181 Cal.App.4th 121, 134, 104 Cal. Rptr.3d 291 (2010):
 Other courts, considering analogous restrictions on expressive activity around polling stations, have likewise consistently concluded polling stations are neither traditional nor designated public forums. (See United Food Commercial Workers Local 1099 v. City of Sidney (6th Cir. 2004) 364 F.3d 738, 749-750 [parking lots and walkways on schools and private property that led to polling places were nonpublic forums because, by "opening up portions of school and private property for use as polling places on election day, Ohio has not opened up a nontraditional forum for public discourse. In fact, there is no evidence in the record of discourse of any sort. There is no evidence of expressive activity occurring anywhere on the properties involved, other than `each voter's communication of his own elective choice[,] and this has long been carried out privately — by secret ballot in a restricted space.'"]; Cotz v. Mastroeni, supra, 476 F.Supp.2d at p. 364 ["[p]olling places clearly are non-public fora and voters present are subject to various First Amendment restrictions, including those based on content"]; American Federation of State, County and Mun. Employees, Council 25 v. Land (E.D.Mich. 2008) 583 F.Supp.2d 840, 848-849; cf. Ramos v. Carbajal (D.N.M. 2007) 508 F.Supp.2d 905, 919 [dicta]; Cotham v. Garza (S.D.Tex. 1995) 905 F.Supp. 389, 396, fn. 4 ["[a]lthough voting booths are places where voters communicate their choices of candidates and propositions, they are not public forums"].)
On the other hand, in Reed v. Purcell,2010 W.L. 4394289, at 5 (D. Ariz.), the court remarked as follows:
 The zone around a polling place is a public forum, where speech restrictions on time place, and manner must be viewpoint neutral and narrowly tailored to serve a significant governmental interest. See Burson, 504 U.S. at 196-97 (explaining that a law establishing a "campaign-free zone" around polling places barred speech in "quintessential public forums" including places "`devoted to assembly and debate,' such as parks, streets, and sidewalks"). Thus, [t]he State must show that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Id., 504 U.S. at 198 (quoting Perry Ed. Ass'n. v. Perry Local Educators' Ass'n., 460 U.S. 37, 45 (1983).
 Alternatively, the zone around a polling place may be classed as a non-public forum. See Marlin v. District of Columbia Bd. of Elections and Ethics, 236 F.3d 716 (D.C. Cir. 2001) (reasoning that because "the interior of a polling place, is neither a traditional public forum nor a government-designated one" it is a nonpublic forum). Restrictions on nonpublic fora need only be reasonable and viewpoint neutral.
 *Page 1